## STATE v. JOHN T. SPEIGHT.

On an indictment charging the defendant in the first count with stealing, and in the second with receiving stolen goods, he may be found guilty generally, because the offenses are of the same grade and the punishment is the same, and the verdict may be sustained, though on a trial at the preceding term, the jury found the defendant guilty of receiving stolen goods, which verdict the Judge set aside and ordered a new trial.

A witness is not competent to testify as to the general character of another witness, simply because he had known him several years; when the question is asked without explanation, and without the preliminary question, whether he knew the general character of the witness, and the means by which he had acquired the knowledge.

The *State* v. *Williams*, 9 Ired. 140, cited and approved.

This was an INDICTMENT consisting of two counts, the first for larceny and the second for receiving stolen goods, to-wit : ten gallons of spirits of turpentine, knowing them to have been stolen. The defendant was first tried on the indictment at October Term, 1872, of the Superior Court of NEW HANOVER county, when his Honor, *Russell, J.,* charged the jury that if they were satisfied that the defendant either stole the turpentine or received it, knowing it to have been stolen, then they should say guilty, and no more, whereupon the jury returned a verdict " guilty of receiving stolen goods." A motion was then made by his counsel that the defendant should be discharged ; but his Honor overruled the motion and ordered a new trial.

At January Term, 1873, the defendant was again put upon his trial on the same indictment, and offered to plead "former acquittal," but his Honor refused to admit the plea, and allowed the plea of " not guilty" to be entered.

On this trial the defendant introduced one P. O'Brian, who testified to material facts for him, and then to strengthen this evidence, he offered to prove by one Vagris that he had known the witness O'Brian several years, and though he had not known the community or any considerable portion thereof to speak of O'Brian's character, yet he

had never heard anything against him from any one.  His Honor excluded the testimony, and the defendant excepted.

His Honor charged the jury as he had done on the former trial, that if they were satisfied that the defendant either stole the turpentine, or received it, knowing it to have been stolen, they must return a general verdict of guilty and nothing more.  Defendant excepted.  The jury rendered a general verdict of guilty, upon which a judgment was pronounced, from which the defendant appealed.

*M. London,* for the defendant.
*Attorney General Hargrove,* for the State.

PEARSON, C. J.  The prisoner was charged in two counts, first, for stealing the spirits of turpentine; second, for receiving the spirits of turpentine, knowing the article to be stolen.  On the first trial the Judge charged that it was not necessary for the jury to decide whether he stole the article or received it, knowing it to have been stolen.  This charge was authorized by *State* v. *Williams*, 9 Ired. 151, where it is held it is sufficient if the jury be satisfied that the prisoner is guilty in one of the modes well charged, because as the offenses are of the same grade, and the punishment the same, " the instruction relieved the jury of some trouble, and could work no prejudice to the prisoner."

The jury, according to our construction of this record, instead of availing themselves of this mode of being relieved from the trouble of investigating the question, went into an investigation, and concluded to find the prisoner guilty only upon the second count.  His Honor not taking this view of the verdict, but treating it as senseless and unmeaning, set it aside, and ordered another trial.  At the next trial the prisoner was found guilty upon both counts.  In regard to the first count, this makes an inconsistency in the record, and we are compelled to hold that the conviction

of the prisoner on the count in which he is charged with stealing the article is erroneous, unless on the ground that the Judge had power to treat the finding of the first jury as a nullity, and to consider the case as if there had been nothing done. This question is not presented, for as we construe the record, the prisoner was found guilty upon the second count at the first trial, and he is found guilty upon that count at the second trial, so upon this count he is convicted at both trials, and can take no benefit of the inconsistency; that by implication he is acquitted on the first trial of stealing, and at the second trial he is found guilty of the stealing as well as of the receiving of the goods, knowing them to have been stolen. There is no greater inconsistency on the face of this record than in the case of Williams *supra*. There it was impossible to tell whether the prisoner stole the slave or took and conveyed him out of the State by violence, or got him into possession by seduction, and then conveyed him out of the State, and the Court for the purpose of punishing crime and bringing malefactors to justice, in other words, for " the administration of the law," decide that it made no difference whether the prisoner stole the slave or got him by seduction or violence, and conveyed him out of the State, *the grade of punishment being the same*, taking it one way or the other.

In this case it may be that the prisoner stole the spirits of turpentine, or it may be, which the first jury thought the most probable, that he received the spirits of turpentine, knowing it to have been stolen. The grade of offense and the punishment is the same, and the joinder of the two counts is allowed by statute, because of the difficulty of proving whether the prisoner stole the thing himself or got some one else to steal it for him, or received it from some person, knowing it to have been stolen. The injury to the public is the same, and the object of the statute was to "stop the holes" out of which malefactors had been escaping.

Upon the question of evidence we also concur. As the facts are set out, the witness Vagris did not by his answer show that he had such a knowledge of the *general character* of the witness O'Brian as to make his opinion in respect to such general character competent evidence. Before a witness can give his opinion as to handwriting, he must say he is acquainted with it, by having seen the party write, or having seen papers in his handwriting, about which there could be no dispute. In this case the witness is not asked " if he knew the general character of the witness O'Brian;" nor does he state that he had any opportunity of knowing it, except that " he had known him for several years, and never heard anything against him from anybody." He does not say he had any intercourse with O'Brian, or any business transactions, or any reason or opportunity for finding out his general character. I may have known a thousand men for several years, never heard anything said against them, and still have no knowledge of their general character.

The law presumes every person to be of good general character until the contrary appears. So this evidence, if competent, was wholly immaterial; it simply affirms an implication of law. Had this witness been asked the usual preliminary questions, to make his opinion as to general character competent, to-wit: are you acquainted with the general character? and then the embarrassment had occurred, because of his not exactly comprehending the legal idea of " general character," it would have presented a different question.

We concur with his Honor in the opinion that there is. no rule of evidence by which, without explanation and without the preliminary question, whether he knew the general character of the witness, and the means by which he had acquired that knowledge, a witness can be competent to give his opinion as to the general character of an-

other witness, simply because he had known him for several years and had never heard anything said against him.

This would be stretching evidence as to general character farther than is done by the old cases. We are unable to see how "the greater liberality in respect to evidence as evinced by recent legislation" effects our question.

There is no error.

PER CURIAM.                    Judgment affirmed.