STATE v. THOMAS GEE.

*Indictment—Murder—Evidence—Judge's Charge.*

1. On a trial of an indictment the acts and declarations of another party tending to show that he committed the offence are inadmissible.

2. When the crime is shown to have been committed by a single person and the question is one of identification, it would be competent to prove that another than the accused did the act; but this must be done by proof direct to the fact and not by admissions or conduct seemingly in recognition of it.

3. It is incompetent to prove by a witness who does not know the general reputation of the accused, who was once a slave, what his former master said of him.

4. The court having charged the jury that every material circumstance must be proved beyond a reasonable doubt and that they must all point to the guilt of the prisoner and exclude every reasonable theory of his innocence, and produce moral certainty of his guilt, it is not *error* to refuse to tell the jury that the circumstances must satisfy them as fully as if direct proof of the act had been produced.

5. When a witness was not sworn, and the fact was not discovered until after the jury had retired; *It was held*, not to entitle the accused to a new trial as a matter of law. The correction of such omissions is left to the discretion of the Judge to set aside the verdict and grant a new trial.

6. Exceptions to evidence, except to such as is made incompetent by statute on grounds of public policy, if not made in apt time, are deemed to be waived, and cannot be afterwards assigned as error.

(*State v. May*, 4 Dev., 328; *State v. Duncan*, 6 Ired., 236; *State v. Jones*, 80 N. C., 415; *State v. Boon*, Ibid., 461; *State v. White*, 68 N. C., 158; *State v. Perkins*, 66 N. C., 126; *Luther v. Skeen*, 8 Jones, 356; *State v. Speight*, 69 N. C., 72; *State v. Swink*, 2 D. & B., 9; *State v. Frank*, 5 Jones, 384; *State v. Rash*, 12 Ired., 382; *State v. Matthews*, 66 N. C., 106; *State v. Bowman*, 80 N. C., 432; *State v. Parker*, Phil., 473; *State v. Ward*, 2 Hawks, 443; *State v. Bullard*, 79 N. C., 627, cited and approved.)

INDICTMENT FOR MURDER, tried before *Shepherd, Judge,* and a jury, at Fall Term, 1884, of CUMBERLAND Superior Court.

The prisoner was charged with the murder of Mary Hughes, committed at her house on Monday night, September 29th, 1884. The deceased lived alone in the suburbs of Fayetteville, some two miles distant from the house of the prisoner, with whom she had kept criminal relations for four years preceding, he spending much of his time at night with her. The deceased had been on that day with Martha Campbell, a neighbor, engaged in picking out cotton in the field, and about dark the two returned to the house of the deceased, at which they parted. After dark, about the hour of 7, the prisoner was seen about 25 yards from the house, going in that direction. He stated to a witness that he left the place a quarter of an hour before sunset on that day. He was also observed to cross the Campbellton Bridge on his way towards his home between the hours of 8 and 9.

Allen Jones, a witness for the State, passed the house or cabin occupied by deceased, about 8 o'clock that night, saw a light in it, and heard her talking. At a later hour, about 11, he again passed it and it was dark.

At 8 o'clock the next morning, Tuesday, the deceased was found by Martha Campbell on the floor, dead, with her skull fractured, as it appeared, by an axe, which with a kettle and two dresses belonging to her, were missing. The same morning the prisoner was discovered burning up the removed dresses, and on being asked what he was about, replied that he was burning nails.

About three weeks before the homicide the prisoner had been heard to say that he understood a man was trying to get between him and her, and that he intended to see that thing out. The case states that there were other circumstances pointing to the prisoner's guilt.

Evidence was offered in defence in regard to the movements of Henry Campbell, husband of Martha, about that time, with the apparent purpose of fixing the homicide upon him; and of his going to the house of the deceased, after his wife on the Wednes-

day next preceding, where the latter had gone to spend the night; and of his violent conduct there as he forced his wife to return. He was met when coming from the house, by a witness who represents him as being mad, and with a knife in his hand which he repeatedly opened and shut. His wife followed on behind.

The prisoner proposed to show that the said Henry Campbell uttered threats, saying on the same Wednesday night that he had a mind to go back, turn over the cabin and kill both women, and he intended to break up his wife's visiting there, and witness would hear "of hell being played out there some time."

These declarations, on objection from the State, were excluded, and the prisoner excepted.

The prisoner introduced a witness by whom to prove his own good character, who, after full explanation of this form of evidence, as constituting general reputation, to render the proposed inquiry intelligible, persisted in saying he did not know what it was.

He was then asked what the old master of the prisoner, while he was a slave, said about him. This testimony was also refused.

When the evidence and the arguments were concluded, prisoner's counsel submitted two instructions, which the court was requested to give to the jury.

1. The jury should be as fully convinced of the guilt of the prisoner from the consideration of the circumstances, as if direct proof had been brought.

2. In this case the burden of proof is on the State throughout, and every material circumstance must be fully proved to the satisfaction of the jury beyond a reasonable doubt.

The last instruction was given, the first refused, and instead the jury were charged that every material circumstance must be established beyond a reasonable doubt; that these circumstances must all point to the guilt of the prisoner, and exclude every reasonable theory of his innocence; and produce moral certainty of his guilt in the minds of the jury before they could convict.

The prisoner excepted to the denial of his first instruction.

After conviction, a motion for a new trial was made for the alleged erroneous rulings and for the further reason, shown on affidavit, that one Tony Williams, a witness for the State, had been examined and testified without having been sworn, the facts of which are found by the judge to be these:

Through an inadvertence, the oath had not been administered, but the witness had been examined and cross-examined without the attention of any one engaged in the trial being called to the omission. The prisoner was represented by two counsel, one of whom had no intimation of the neglect, until after the verdict was rendered. The other, after the case had gone to the jury and an hour before their agreement, was advised of the fact that one of the witnesses had not been sworn; but his informant refused to tell who the witness was. This attorney was not present when the verdict was returned, though he had opportunities to communicate to the court the information he had before the verdict was rendered.

The court acquits the attorney of any improper motive in failing at once to make known what he had heard.

After a verdict of guilty, the prisoner moved in arrest of judgment, because the bill of indictment did not charge that the deceased was in the peace of God, as well as in the peace of the State.

The court refused to arrest the judgment, and pronounced judgment on the verdict, from which the prisoner appealed.

*Attorney-General*, for the State.
*Mr. R. S. Huske*, for the defendant.

SMITH, C. J. (after stating the facts). The exceptions shown in the record are four in number, and these are now to be examined.

1. The rejection of the proof of threats and other declarations of Henry Campbell, offered to fasten the criminal act upon him and in exoneration of the accused.

The inquiry before the jury is as to the guilt of the accused, did *he* commit the homicide; and full and satisfactory evidence of this was required before there could be a conviction.

The fact that another co-operated and is also guilty, does not disprove the charge against the prisoner, nor absolve him from responsibility.

When the crime is shown to have been committed by a single person, and the question is solely one of identification, it would be competent to prove that another than the accused did the act, because this would directly disprove the charge against the latter. But even in this case the proof must be direct to the fact, and cannot come from admissions, or conduct seemingly in recognition of it. These are but "*res inter alios actæ*," and not under the sanction of an oath.

The adjudications which exclude such testimony are positive, and satisfactory grounds assigned in the opinions for the ruling. *State* v. *May*, 4 Dev., 328 ; *State* v. *Duncan*, 6 Ired., 236 ; *State* v. *Jones*, 80 N. C., 415 ; *State* v. *Boon*, *Ibid.*, 461 ; *State* v. *White*, 68 N. C., 158.

2. The testimony as to what the former owner of the prisoner said of him.

The witness, after being told what was meant by general character, when he was interrogated as to his knowledge of the prisoner's reputation, said he did not know what it was. This disqualified him to answer the question, and he should, at once, have been made to stand aside, as is ruled to be the proper practice in *State* v. *Perkins*, 66 N. C., 126.

The rejected inquiry sought to elicit the opinion of a single person, while the jury could only hear testimony from one who knew and could communicate the estimate formed in the public mind, that is, what is his general repute among those who know, and this would seem to be among his associates. *Luther* v. *Skeen*, 8 Jones, 356 ; *State* v. *Speight*, 69 N. C., 72.

3. The refused instructions and those given. The exception seems to be confined to the refusal of the Court to charge that

the series of circumstances must as fully satisfy the jury, as if direct proof of the act had been produced.

It is true that language somewhat similar was employed in the charge in *State* v. *Swink*, 2 D. & B., 9, the Court adding, after telling the jury that the testimony must be such as to satisfy them beyond a reasonable doubt of the prisoner's guilt, "that the circumstances must be as clear and strong as the testimony of one credible and respectable witness." This charge was sustained as being free from objection on the part of the accused. But no special significance is attached to these concluding words. In a later case, in the argument of the defendant's counsel, it was insisted on, as a rule of law, that, "before the jury can convict on circumstantial evidence, they must be as well satisfied of the guilt of the accused, as if one credible eye-witness had testified to the fact."

The court declined so to charge and said to the jury, "such was not a rule of law, but only an illustration; all that was intended by the comparison, was to enjoin the jury that they must be fully satisfied beyond a reasonable doubt of the guilt of the accused." Upon the appeal, the Chief-Justice, who delivered the opinion, says: "We do not see in the charge, or in the manner of submitting the case to the jury, *any error of which the defendant has a right to complain.*"

This was upon a charge of larceny, but the same rules prevail in the trial of felonies of a higher grade.

The general charge, relieved of this objection, is sustained by numerous cases, and is as full and favorable to the prisoner as he could ask. We refer to some of them. *State* v. *Rash*, 12 Ired., 382; *State* v. *Frank*, 5 Jones, 384; *State* v. *Matthews*, 66 N. C., 106; *State* v. *Bowman*, 80 N. C., 432; *State* v. *Parker*, Phil., 473.

4. The testimony of the unsworn witness. Neither the researches of counsel, nor our own, have led to the discovery of any case, in which the effect of the examination of a witness to whom the oath, through inadvertence, had not been administered before

the verdict, has been considered. If such cases have occurred, the correction seems to have been found in the discretionary power of the court to set aside the verdict and grant a new trial. The court in the present case declined to exercise the power, and the exception involves the question of the legal right of the accused, under such circumstances, to have another jury to pass upon the issue.

As a general rule of practice, objections to the competency of a witness, as of a juror, must be taken in apt time, that is, when he is offered; as it must be to any testimony when he is about to deliver it. If the proper moment passes without the objection being made, it is waived, though it remains in the power of the court afterwards to strike out the testimony, or the objectionable part of it, and direct the jury to disregard it. *State* v. *Ward,* 2 Hawks, 443.

The rule may, however, be subject to a qualification, as to evidence, the introduction or use of which is forbidden by statute made in furtherance of public policy. Such as the confessions of the parties in divorce suits, and the like in criminal actions for illicit cohabitation of unmarried persons. *State* v. *Bullard,* 79 N. C., 627.

The general rule remains, that exception to testimony which if objected to, ought not to be heard, must be made when it is offered, so that, if practicable, the objection may be removed, or other not incompetent, may be used instead. Thus, if the objection be to the irregular and unlawful mode of administering the oath, or to the failure to swear the witness at all, it could be met and obviated by a new and proper manner of administering it. It is as much the duty of counsel to see that no unsworn testimony is received against the client, as it is that testimony incompetent for any other reason should be excluded; and, for neglect to give this watchful oversight to the case as it progresses, the counsel is responsible to the client, but it does not enter as a vitiating element in the verdict to the rendering of which it may have contributed.

Again, one of the counsel was advised of the omission in time to bring it to the notice of the Court, when the jury might have been called back and directed to ignore the testimony of the witness, or the witness, being sworn, might have been allowed to deliver his testimony again, under the sanction of the oath. This was not done, and it would be detrimental to public justice to allow a prisoner to remain silent, awaiting the chances of an acquittal, and, if disappointed in the result, to fall back upon a reserved exception, the substance of which is kept from the knowledge of the Court, when, if known, it could have been provided against.

But the testimony related to the movements of another party, against whom suspicion was sought to be directed, and in opposition to evidence which had been introduced for the defendant.

For reasons already stated, the whole of this evidence, as tending to divert the minds of the jury from the real issue they were to try, as a collateral inquiry, ought to have been rejected for irrelevancy.

It is not seen how any harm would come to the prisoner, from the admission of the witness's testimony as to the suspicious conduct of one with whom he is not shown to have had any connection.

The prisoner's testimony, offered to show criminality in some one else, was wholly foreign to the issue of his own guilt, and equally so was that offered in opposition. All ought to have been discarded, and all received could have no injurious effect upon the prisoner's defence.

5. Of the motion in arrest of judgment, it is only necessary to say it has no support in law.

Upon a calm and careful review of the record and of the exceptions contained in it, we find no error and the prisoner must meet the consequences of the crime of which the jury find him guilty.

Let this be certified to the court below that it may proceed to judgment upon the verdict.

. No Error. Affirmed.