CLARK, C. J., dissenting.
Criminal action for the unlawful sale of intoxicating liquors. There was evidence on the part of the State tending to show that in September, 1921, E. H. Sugg et al., officers in the Revenue Department of the State, under a proper warrant, made search of defendant's premises at and in said county, and found there several empty jugs and bottles, all having the odor of corn whiskey, and they also found between the kitchen and smoke-house, hidden in some weeds, a two-gallon jug with about one gallon of corn whiskey in it, etc.
For the defendant the evidence tended to show that defendant was not on the premises at the time, having gone to Kinston to sell his tobacco crop. Defendant himself testifying as a witness denied that he had any whiskey on his premises, or that he had any interest therein. He further testified that he had several hands working his farm, and one of these, Jones Forbes, had a room in defendant's house. That on *Page 695 
the Saturday night before Forbes had procured a gallon of whiskey, which he had on the premises, and witness having found this out, remonstrated with Forbes. There was a quarrel between them about it, and witness discharged Forbes. There were no bottles or other vessels on witness's place having the odor of whiskey that witness knew anything about. Several witnesses testified to the good character of the defendant.
In reply, the State introduced, as a witness, Sheriff Herring, who testified as follows:
Sheriff Herring, for the State: "I know the defendant Mills.
"Q. What is his general reputation? A. All I can tell you is the report to me what people said to me.
"To the foregoing answer defendant objects; objection overruled; defendant duly excepted. Exception No. 6.
"Q. Prior to the time he was arrested? A. He was reported to me as a man handling liquor."
Objected to and exception taken. There was verdict of guilty, judgment, and defendant excepted and appealed.
It is fully recognized that in the trial of causes the testimony of a witness may be impeached by evidence of his bad character, and it is equally well established that before this is allowed the impeaching witness must qualify himself by saying under oath that he knows what such character is. This is not at all a meaningless position, but under some of the more recent rulings as to the examination of witnesses its proper enforcement is at times necessary to prevent a conviction by rumors that are mere hearsay declarations on the principal question of guilt or innocence.
In S. v. Parks, 25 N.C. 296, Judge Gaston speaks most impressively on the subject as follows: "It is essential to the uniform administration of justice, which is one of the best securities for its faithful administration, that the rules of evidence should be steadily observed. Among these, the rule which regulates the admission of testimony offered to impeach the character of a witness is now so well established and so clearly defined that a departure from it must be regarded as a violation of law. The witness is not to be discredited, because of the opinions which any person or any number of persons may have expressed to his disadvantage, unless such opinions have created or indicate a generalreputation of his want of moral principle. The impeaching witness *Page 696 
must, therefore, profess to know the general reputation of the witness sought to be discredited, before he can be heard to speak of his own opinion or of the opinions of others, as to the reliance to be placed on the testimony of the impeached witness."
And in S. v. Coley, 114 N.C. 879, Avery, J., delivering the opinion, said: "No principle of evidence is more clearly settled in North Carolina, nor by a longer line of decisions than that a witness will not be allowed to testify as to character until he shall have first qualified himself by stating that he knows the reputation of the person in question." And many other decisions on the subject are to the same effect. S. v. Ussery,118 N.C. 1177; S. v. Gee, 92 N.C. 756; S. v. Speight, 69 N.C. 72; S. v.Perkins, 66 N.C. 126.
Recurring to the record, we do not think that the exceptions noted can be brought within the principle or meaning of these decisions. Sheriff Herring at no time professes to know the character of the impeached witness. "All I can tell you is the report to me, what people said to me"; and further, "He was reported to me as a man handling liquor." Whether these reports were from few or many people, and whether from one or the other, they had had the effect of creating a settled and general estimate adverse to the character of the witness in no way appears. The entire statement creates the impression rather that the witness is giving the effect of rumors born of the present charge, and not the general reputation of the impeached witness in the community, the only kind of evidence that is competent in such an inquiry.
The cases of S. v. Butler, 177 N.C. 585, and S. v. Cathey, 170 N.C. 794, are not in contravention of this decision. In both, the witnesses had first qualified himself by saying that he knew the general character of the impeached witness, and was then allowed to say what it was, thus bringing themselves within the rules of well ordered procedure, as approved in the cases referred to.
There are other objections to the validity of this conviction that are worthy of grave consideration, but as they may not appear on a second trial, they are not more fully adverted to.
For the error indicated, defendant, in our opinion, is entitled to a new trial, and it is so ordered.
New trial.