Two criminal actions were instituted against the defendant. It was charged in one bill of indictment that the defendant "did unlawfully and willfully obstruct a public road, or highway, by placing nails, driven in this wood, and placing them in the public road, so as to stick in automobile tires, or by placing nails or tacks in said road, which nails did become fastened or stick in automobiles in large numbers and caused punctures."
In the other bill of indictment it was charged that the defendant "did unlawfully, willfully and wantonly injure the personal property of another, or another's, to wit, O. F. Woodcock, several times, between June, 1924, and September, 1924; G. E. Maultsby, Dewey Croom, Vance Croom, W. H. Horrell, Willie J. Pridgen, John Porten, and Alvin Woodcock, by placing nails or tacks in thin wood and placing same in the public road, to become fastened in automobile tires of the aforesaid owners, causing punctures and otherwise damaging and injuring said automobile tires, while passing upon the public road."
These criminal actions were consolidated and tried together as one bill of indictment with two counts.
The defendant complained because the trial court consolidated the two cases and tried them together, as upon one bill of indictment with two counts. In this order we can perceive no error whatever. It was not only proper to consolidate these cases and try them together, instead of "taking two bites at the cherry," but it would appear that C. S., 4622, makes it the duty of the trial court so to do.
Both offenses charged are of the same grade, being misdemeanors, and the punishment for each is the same. When this is the case, the right to join the counts in one warrant of indictment has always obtained in North Carolina. "Each count is, in fact and theory, a separate indictment." S. v.Toole, 106 N.C. 736; S. v. Mills, *Page 351 181 N.C. 530; S. v. Brown, 182 N.C. 761. This rule was in vogue in this State for many years prior to the enactment of C. S., 4622; Public Laws 1917, ch. 168. S. v. McNeill, 93 N.C. 552.
Prior to C. S., 4622, in S. v. Watts, 82 N.C. 656, the Court said: "The rule for joining different offenses in the same bill of indictment is, that it always may be done when the grade of the offenses and the judgments are the same."
Also, in S. v. Speight, 69 N.C. 72, the Court approved the joinder of separate counts, since the grade of the offenses and the punishments were the same.
The rule in this State now is that different counts relating to the same transaction, or to a series of transactions, tending to one result, may be joined, although the offenses are not of the same grade. S. v. Lewis,185 N.C. 640; S. v. Burnett, 142 N.C. 578; S. v. Howard, 129 N.C. 585; S.v. Harris, 106 N.C. 683; S. v. Mills, supra; C. S., 4622.
The reasons against such a joinder, under the English cases, do not now obtain, as pointed out by Adams, J., in S. v. Lewis, supra. In S. v. Mills,supra, as in the case at bar, there was no motion to quash or to require the State to elect.
S. v. McNeill, supra, relates to felonies, and the case at bar relates only to misdemeanors. In the McNeill case, the Court, through Merrimon, J., says: "Distinct felonies of the same nature may be charged in different counts in the same indictment, and two indictments for the same offenses may be treated as one containing different counts." "This, certainly, may be done, and we can see no substantial reason why the same rule of practice may not apply to several indictments against the same parties for like offenses, when the just administration of criminal justice will thereby be subserved."
The evidence in the case at bar makes only one narrative. One connected story may be told covering the entire transaction or series of transactions. Therefore, C. S., 4622, clearly applies and makes plain the duty of the court to consolidate the indictments.
It appears from the evidence that the defendant lived near the highway, and that he was seen to come out from his house and put a block of wood, which was some three to five inches in length and one-half inch in thickness, with sharpened nails driven through it, so that the sharp points would stick up in the ruts where automobile wheels ran, and the block was so covered with sand that only the ends of the nails would protrude above the sand. These nails in the blocks of wood (and sometimes pieces of hoop-iron with nails likewise driven through them were used) would stick through the automobile tires and cause punctures and serious damage to the automobiles, and much inconvenience *Page 352 
and hindrance to travel on this highway. There was much evidence tending to show a continued nuisance, resulting from such practices, to the traveling public. Many witnesses saw the different parts of these transactions, and the evidence was ample to sustain a conviction on both counts.
The defendant contended that he was not present at the time when the State's witnesses testified that they saw him place one of the blocks, and that he was not guilty of placing any of these things in the highway, and was elsewhere each time such occurrences took place. The jury, however, accepted the State's view of the case and convicted the defendant on both counts.
In his second exception the defendant contends that the testimony is not sufficient to constitute an obstruction to the public road, or highway, as contemplated by C. S., 3789. This section uses the word "obstruction." The trial court charged the jury that if the defendant placed this block, with two nails in it, or any of these blocks, in the road, in the ruts where automobiles are accustomed to run, such would constitute an "obstruction" to the public highway, thereby holding as a matter of law that these pieces of wood and hoops, with nails driven through, so as to cause serious damage, hindrance and delay to the traveling public, was an "obstruction."
The original meaning of the word "obstruction" probably did not limit itself to the idea of "building up" before or against, to "block up," to "stop up," or "close up," being formed from the Latin verb, "obstruere."
Long ago, usage broadened its meaning so as to include the idea of delay,impeding, or hindering. S. v. Edens, 85 N.C. 522.
In S. v. Godwin, 145 N.C. 464, the obstruction was a fence, and the test applied was whether it rendered the use of the public highway, a street, less convenient. People v. Eckerson, 117 N.Y. Supp., 419, holds that if the impediment prevents free passage along the highway and renders it difficult for travel, it is an "obstruction." An "obstruction" is a blocking up with obstacles or impediments; impeding, embarrassing, or opposing the passage along and over a street or highway. Chase v. Oshkosh,81 Wis. 313. Interfering with free passage along a highway constitutes an "obstruction," in Davis v. Pickerell, 139 Iowa 186.
"An `obstruction,' like dirt on a boy's face, is merely matter out of place, and that which may be a stepping-stone, when in a position where it is needed and can be used as such, becomes an `obstruction' when occupying a place intended for other use, and where it is not needed and cannot be so used," says McCormack v. Robin, 126 La. 594.
In Jennings v. Johonnott, 149 Wis. 660, an obstruction is defined to be: "An object unlawfully placed within the limits of a highway is an obstruction if it impedes or seriously inconveniences public travel or *Page 353 
renders it dangerous, and it is not at all necessary that such object should stop travel in order to be an obstruction." This case, with a wealth of authority, analyzes and discusses the reasons for this definition of an "obstruction."
Viewed in the light of these authorities, it is clear that the charge was correct, and properly defined an "obstruction." It is interesting to note in this connection that the defendant himself, in his testimony, referred to these blocks of wood, equipped with nails, as "obstructions." While such a statement on his part would not affect the question of law involved, it does show how such things are understood in ordinary, every-day affairs."
The court charged the jury that, "if the defendant put out these nails, or any of them, for the purpose of injuring an automobile or a motor-vehicle of any kind, of any one else, that would be wanton; and if that some one's property was injured by reason of placing these things in the road, that the defendant would be guilty under the second count in the consolidated bill of indictment, if he did it willfully and wantonly."
Under our statute (C. S., 4331) the evidence on the part of the State, which the jury has found to be true, is sufficient to sustain the charge of the court.
In S. v. Martin, 141 N.C. 832, the evidence disclosed that defendant threw a rock at a street car and broke a glass window. S. v. Frisbee,142 N.C. 672.
The court charged the jury in compliance with the statute. The charge does not comply with the common-law requisites of malicious mischief, there being no destruction of the property, but that is not necessary now, because the statute (C. S., 4331) was enacted to change the law in this respect, though not, perhaps, to supersede the common law as to malicious mischief. S. v. Martin, supra.
The defendant excepts to the sentence pronounced against him wherein he is required to work on the roads for a period of four years — two years for each offense — the sentence in the latter case to begin at the expiration of the first sentence.
The contention that C. S., 2619, applies is not well founded. The evidence would support an indictment under this section, but the record plainly shows that the trial was under C. S., 4331, and C. S., 3789.
The gist of the offense, under C. S., 2619, is in the putting or placing
of the dangerous substances named in a public highway, regardless of the actual results flowing therefrom. While, under C. S., 4331, and C. S., 3789, the gist of the offenses therein denounced is the effect of the acts prohibited. It is clear that the Legislature did not intend to supersede C. S., 4331, and C. S., 3789, even when the evidence may *Page 354 
show that C. S., 2619, has been violated, as a necessary link in the evidence, upon charges as made in the instant case.
Violations of C. S., 3789, and C. S., 4331, are punishable by fine or imprisonment, or both, in the discretion of the court.
C. S., 4622, provides not only for the joinder of indictments, as herein ordered, but further provides that "this section (C. S., 4622) shall not be construed to reduce the punishment or penalty for such offense or offenses."
The trial court sentenced the defendant to a term of two years on the roads for each offense, making the sentence in the second count begin at the expiration of the sentence in the first count.
It is admitted that neither sentence transcends the punishment permitted in each statute; hence we have no desire to interfere with this judgment as pronounced by the learned and experienced trial judge.
It is neither cruel nor unusual punishment; therefore it is not prohibited by Article I, section 14, of the Constitution of North Carolina. There is no occasion in the instant case for this Court to interfere. S. v.Driver, 78 N.C. 423; S. v. Mangum, 187 N.C. 477; S. v. Manuel, 20 N.C. 144.
In fact, the judgment in the instant case is fully sustained in this regard by the opinion in In re Black, 162 N.C. 457, in which it is said: "It seems to be well settled by many decisions and with entire uniformity that where a defendant is sentenced to imprisonment on two or more indictments on which he has been found guilty, sentence may be given against him on each successive conviction; in the case of the sentence of imprisonment, each successive term to commence from the expiration of the term next preceding. It cannot be urged against a sentence of this kind that it is void for uncertainty; it is as certain as the nature of the matter will admit. But the sentence must state that the latter term is to begin at the expiration of the former one; otherwise, it will run concurrently with it. It is absolutely essential that the last sentence shall state that the term of imprisonment is to begin at expiration of former sentence, in order to prevent the prisoner from serving the two sentences concurrently with each other."
This rule is sustained in other jurisdictions. U.S. v. Patterson, 29 Fed., 775; Fortson v. Elbert County, 117 Ga. 149; Ex parte Gafford,25 Nev. 101; Ex parte Hunt, 28 Texas Rep., 361.
Judgments providing as in the instant case are proper. Kite v. Com., 11 Met. (Mass.), 581; Blitz v. U.S., 153 U.S. 308; Ex parte Jackson,96 Mo., 116.
Mr. Justice Allen, in S. v. Cathey, 170 N.C. 794, reviews the authorities, and conclusively sustains the view entertained by the trial court in the instant case. *Page 355 
The contention of the defendant that this judgment inflicts doublepunishment for practically the same offense cannot be sustained. The same transaction, or the same series or transactions, may support several offenses that are separate and distinct crimes.
In S. v. Jesse, a slave, 20 N.C. 98, Ruffin, C. J., says: "The facts contained in the first indictment fall short, in some essential respects, of those indisputably requisite to constitute the crime in the second indictment; so likewise of the facts laid in the second indictment, if true throughout, they would not make up the crime specified in the first indictment."
In S. v. Nash, 86 N.C. 650, it is clearly stated: "To support a plea of former acquittal, it is not sufficient that the two prosecutions should grow out of the same transaction; but they must be for the same offense;the same both in fact and in law." S. v. Williams, 94 N.C. 891.
In S. v. Taylor, 133 N.C. 755, Connor, J., upholds the same doctrine, that the two prosecutions must be for the same offense — the sameboth in law and in fact — to sustain the plea of former conviction.
If two statutes are violated, even by a single act, and each offense requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the one statute. S. v. Stevens,114 N.C. 873; S. v. Robinson, 116 N.C. 1046. To the same effect: S.v. Hankins, 136 N.C. 621.
In S. v. Freeman, 162 N.C. 595, Allen, J., gives the seven principles of law bearing upon the plea of former acquittal, and the second principle seems to us to be decisive of the defendant's contention. It is as follows: "That the offenses are not the same if, upon the trial of one, proof of an additional fact is required which is not necessary to be proven in the trial of the other, although some of the acts may be necessary to be proven in the trial of each."
In S. v. Gibson, 170 N.C. 697, the plea was former jeopardy, and the same rule as stated in S. v. Nash, supra, was applied.
The plea of former acquittal, former conviction, former jeopardy, or double punishment for the same offense, or by whatever name called, have the same basis in these authorities, and in the "reason of the thing" the two prosecutions must be identical, in law and in fact, to make the plea good.
Upon the whole case, we find nothing of which the defendant can justly complain. Therefore, we are compelled to hold there is
No error. *Page 356