IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-525

Filed 15 August 2023

Guilford County, No. 15 CRS 84632

STATE OF NORTH CAROLINA

        v.

RYAN PIERRE BROWN, Defendant.

Appeal by defendant from order entered 22 April 2022 by Judge Susan E. Bray in Guilford County Superior Court. Heard in the Court of Appeals 24 January 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Kayla D. Britt, for the State.*
>
> *Dobson Law Firm, PLLC, by Miranda Dues, for the Defendant-Appellant.*

STADING, Judge.

Ryan Pierre Brown ("defendant") petitions for a writ of *certiorari*, claiming the trial court erred in summarily denying his motion for appropriate relief ("MAR"). Defendant asserts the trial court improperly denied his MAR because an evidentiary hearing was not held to make the ultimate legal determination at issue in this matter. For the reasons set forth below, we deny defendant's petition for a writ of *certiorari* and dismiss his appeal.

## I.     Factual and Procedural History

On 11 August 2015, officers from the Greensboro Police Department responded to a report of "shots being fired" at an apartment complex. Upon arrival, they observed the victim, Jermaine Hayes, suffering from a gunshot wound. Mr. Hayes later died at the hospital. Kelsey Bell, the tenant of the apartment and girlfriend of the victim, sold Xanax to another woman named Brenda Goins. On her outing to buy the drug, Ms. Goins was accompanied by defendant and Demario Danzy. While Ms. Bell and Ms. Goins conducted the drug transaction inside the apartment, Mr. Hayes walked outside of his girlfriend's residence to where defendant and Mr. Danzy were located. Subsequently, Ms. Goins exited the apartment while Ms. Bell remained inside of her residence. Shortly thereafter, Ms. Bell heard gunshots and witnessed Mr. Hayes hastily re-enter the apartment and subsequently collapse on the floor.

Ms. Bell was acquainted with Ms. Goins and identified her as well as the vehicle at the crime scene. Police officers obtained a surveillance video showing defendant, Mr. Danzy, and Ms. Goins together. Later, Mr. Danzy was arrested and told investigators that he was the driver of the vehicle that transported defendant and Ms. Goins to Ms. Bell's apartment. Additionally, Mr. Danzy admitted that he and defendant had a common gang association and Mr. Hayes was involved in a rival gang. Mr. Danzy reported that after some discussion between the three males outside of the apartment, Ms. Goins exited the apartment and Mr. Hayes turned to walk away. Mr. Danzy recounted that defendant then pulled out a handgun and fired a

number of shots at Mr. Hayes. Mr. Danzy claims this action by defendant startled him and he drove away with Ms. Goins and defendant in the vehicle.

Ms. Goins provided a statement to law enforcement that was "pretty similar to Mr. Danzy's [statement]." The information provided by Ms. Goins was different from Mr. Danzy's statement in that "[s]he did indicate that Mr. Danzy apparently was a little bit more involved with . . . egging on [defendant]." When Ms. Goins returned to the vehicle, she heard defendant say he would shoot Mr. Hayes, and Mr. Danzy encouraged him to go ahead and do it. She then reported that defendant pulled out a handgun and started firing, that it shocked everybody in the car, including Mr. Danzy, and they drove off.

On 28 September 2015, defendant was indicted for one count of first-degree murder and one count of robbery with a dangerous weapon.[1] On 4 October 2017, defendant pled guilty to second-degree murder and robbery with a dangerous weapon pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160 (1970). The trial court judge entered a consolidated sentence of 192 to 243 months imprisonment.

On 11 April 2022, defendant filed a MAR pursuant to N.C.G.S. § 15A-1415(c), purporting that Ms. Goins had "recant[ed] her previous testimony and identification of Defendant as the shooter." The basis for defendant's motion was an affidavit signed by Ms. Goins on 6 January 2022, claiming that her statement made in 2015 to law

---

[1] This robbery charge is unrelated to the present case.

enforcement identifying defendant as the shooter was incorrect. She now maintains that the co-defendant, Mr. Danzy, shot and killed Mr. Hayes.

On 22 April 2022, "[u]pon a review of the motion, the court file, the applicable statutory and case law," the trial court denied defendant's MAR without holding an evidentiary hearing since "the claim alleged involves only legal issues." The order contained findings noting, among other things, that "[t]here was no testimony[,] the case never went to trial[,] [and] defendant chose to plead guilty." Moreover, the trial court found there was "no recanted testimony[,]" as "Brenda Goins never gave any testimony or any statement under oath." Accordingly, the trial court concluded that defendant "entered a voluntary plea," and Ms. Goins's proffer was not testimony as anticipated by N.C.G.S. § 15A-1415(c). Defendant entered a notice of appeal with the trial court on 4 May 2022 and petitioned this Court to issue a writ of *certiorari* on 21 July 2022.

## II. Analysis

In this matter, defendant claims that there are meritorious issues for our consideration such that we should grant his petition for writ of *certiorari*. Under N.C. Gen. Stat. § 15A-1422, "the court's ruling on a motion for appropriate relief pursuant to G.S. 15A-1415 is subject to review . . . [i]f the time for appeal has expired and no appeal is pending, by writ of certiorari." N.C. Gen. Stat. § 15A-1422(c)(3) (2021). "The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit . . . review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the

- 4 -

trial court ruling on a motion for appropriate relief." N.C. R. App. P. 21. "A petition for the writ must show merit or that error was probably committed below. *Certiorari* is a discretionary writ, to be issued only for good and sufficient cause shown." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (internal citations omitted). For the reasons discussed below, defendant's petition for the writ does not "show merit or that error was probably committed below." *Id.*

First, defendant contests the trial court's determination that "[t]here is no recanted testimony." N.C. Gen. Stat. § 15A-1415(c) provides in relevant part that "a defendant at any time after verdict may by a motion for appropriate relief, raise the ground that evidence is available which was unknown or unavailable . . . at the time of trial, which could not with due diligence have been discovered or made available at that time, including recanted *testimony*. . . ." N.C. Gen. Stat. § 15A-1415(c) (2021) (emphasis added). Since we are presented with a question of statutory interpretation, this inquiry is a question of law, subject to *de novo* review. *State v. Largent*, 197 N.C. App. 614, 617, 677 S.E.2d 514, 517 (2009). Our "primary endeavor . . . in construing a statute is to give effect to legislative intent. . . . If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 276–77 (2005) (citations omitted).

As a preliminary matter, we note that our Supreme Court has analyzed the word *verdict* in the context of a separate statute involving postconviction DNA

testing. *See State v. Alexander*, 380 N.C. 572, 587-89, 606, 869 S.E.2d 215, 227-28, 239 (2022) (Newby, C.J., concurring in the result). In any event, considering the matter before us, the operative word at issue is *testimony*—which is defined as "[e]vidence that a competent witness under oath or affirmation gives at a trial or in an affidavit or deposition." *Testimony*, *Black's Law Dictionary* (7th ed. 1999). Evident from the plain meaning of the text of the statute, as a precondition to prevail pursuant to defendant's claims made in his petition, this matter would have required that a witness previously provided *testimony* in some form, which was subsequently recanted. Comparatively, the unsworn statement given to law enforcement—upon which defendant purports reliance for his guilty plea—does not properly align with the definition of *testimony*. Consequently, defendant's claims contained in his petition fall outside of the parameters of N.C. Gen. Stat. § 15A-1415(c).

Defendant's reliance upon *State v. Nickerson*, 320 N.C. 603, 359 S.E.2d 760 (1987), and *State v. Britt*, 320 N.C. 705, 260 S.E.2d 660 (1987), is misplaced as the logic of each case involves the subsequent recanting of sworn testimony provided by a witness during a jury trial. Additionally, defendant and the dissent cite *State v. Howard*, 247 N.C. App. 193, 783 S.E.2d 786 (2016), and *State v. Brigman*, 178 N.C. App. 78, 632 S.E.2d 498 (2006), as a basis to grant defendant's petition for writ of *certiorari* and vacate the ruling of the trial court. Unlike the present matter, in *State v. Howard*, a witness provided an affidavit repudiating a statement that defendant alleged "rendered his trial testimony false"—after providing sworn testimony at trial.

247 N.C. App. at 210, 783 S.E.2d at 797. Furthermore, the effort to analogize *State v. Brigman* fails for similar reasons—the witness testified at the defendant's trial. 178 N.C. App. at 83–84, 623 S.E.2d at 502.

The dissent would have us employ the jurisprudence of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), to resolve the issue before us. In *Crawford*, the United States Supreme Court recounted an extensive historical basis, including the trial of Sir Walter Raleigh, underpinning its analysis specific to the Sixth Amendment's Confrontation Clause. 541 U.S. at 43–50, 124 S. Ct. at 1359–63; U.S. CONST. amend. VI. The Court's detailed account aimed to highlight that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford*, 541 U.S. at 50, 124 S. Ct. at 1363.

In stark contrast, here, defendant was confronted with no such evil and could have availed himself of rights afforded under the Constitution. The record shows that defendant pled guilty pursuant to *North Carolina v. Alford* and swore to his transcript of plea that contained an understanding that his decision forfeited his right to trial in which he could "confront and cross examine witnesses against" him. Had defendant's case proceeded to trial and the same statement was admitted in furtherance of a conviction, without an opportunity to confront the witness, *Crawford's* analysis and definitional application would be relevant. 541 U.S. at 68–69, 124 S. Ct. at 1374. Moreover, had defendant's case proceeded to trial and the

witnesses testified in conformity with this statement, but later recanted the testimony that led to a conviction, an evidentiary hearing would be appropriate under N.C. Gen. Stat. § 15A-1415(c). However, neither of these scenarios occurred here and defendant was not deprived of his constitutional or statutory rights. Defendant was provided those rights but elected to forego them in favor of a plea bargain to a lesser-included offense consolidated with another unrelated felony offense for sentencing. It would be a leap of logic for this Court to hold that the jurisprudence carefully crafted to prevent deprivation of the constitutional right to confront witnesses—fundamental to our system of justice—should be extended to the specific legal issue presented in this matter. Thus, we decline to conflate the Supreme Court's logic applied to Confrontation Clause jurisprudence to the concerns sought to be addressed by N.C. Gen. Stat. § 15A-1415(c) in determining the meaning of *testimony*.

Defendant's final argument, that the trial court erred in failing to hold an evidentiary hearing, points to the language in N.C. Gen. Stat. § 15A-1420, which states that "[a]ny party is entitled to a hearing on questions of law or fact arising from the motion and any supporting or opposing information presented unless the court determines that the motion is without merit." N.C. Gen. Stat. § 15A-1420(c)(1) (2021). However, this subsection of the statute also requires that "[t]he court must determine, on the basis of these materials and the requirements of this subsection, whether an evidentiary hearing is required to resolve questions of fact." *Id.* Furthermore, N.C. Gen. Stat. § 15A-1420 requires that "[t]he court must determine

the motion without an evidentiary hearing when the motion and supporting and opposing information present only questions of law." N.C. Gen. Stat. § 15A-1420(c)(3). As noted in defendant's cited case, *State v. Howard*:

> An evidentiary hearing is not automatically required before a trial court grants a defendant's MAR, but such a hearing is the general procedure rather than the exception. Indeed . . . an evidentiary hearing is mandatory *unless* summary denial of an MAR is proper, or *the motion presents a pure question of law*.

247 N.C. App. at 207, 783 S.E.2d at 796 (emphasis added). Indeed, here, the trial court was faced with a determination of law rather than an issue of fact. Therefore, in this matter, the trial court's summary denial of the MAR was proper.

## III.  Conclusion

For these reasons, defendant's petition for a writ of *certiorari* is denied and his appeal is dismissed.

DISMISSED.

Judge GORE concurs.

Judge RIGGS dissents by separate opinion.

No. COA22-525 – *State v. Brown*

RIGGS, Judge, dissenting.

Mr. Brown entered an *Alford* plea to the murder of Mr. Hayes, meaning he denied guilt but acknowledged "there [was] sufficient *evidence* to convince the judge or jury of [his] guilt." *State v. Guinn*, 281 N.C. App. 446, 447 n.1, 868 S.E.2d 672, 674 n.1 (2022) (emphasis added) (citations omitted).  Among the evidence undergirding Mr. Brown's guilty plea were two statements that were the only indicia of his identity as the murderer: (1) a written statement from Mr. Danzy that Mr. Brown was the shooter; and (2) a proffer from Ms. Goins corroborating Mr. Danzy's statement and confirming, based on her eyewitness account, that Mr. Brown killed Mr. Hayes.  Mr. Brown was not alone in relying on this evidence in making his *Alford* plea; the State agreed to the plea and premised its statement of the facts on this evidence at the plea hearing, and the trial court likewise depended on that evidence[2] in "first determining that there is a factual basis for the plea" before accepting it.  N.C. Gen. Stat. § 15A-1022(c) (2021).

Almost five years later, Ms. Goins—by sworn affidavit—recanted her

---

[2] That Ms. Goins' proffer was considered evidentiary by the parties and the trial court is disclosed by his transcript of plea "consent[ing] to the Court hearing a summary of the evidence" and the proffer's subsequent inclusion in the State's recitation thereof.

evidentiary statements relied upon by Mr. Brown, the State, and the trial court in the entry of his *Alford* plea. Ms. Goins' affidavit calls into substantial doubt the only two pieces of evidence establishing Mr. Brown as the shooter to the exclusion of all others; it both impeaches Mr. Danzy's testimony *and* serves as positive evidence that he, and not Mr. Brown, committed the murder.[3] Mr. Brown, justifiably relying on the statutory scheme designed to afford defendants—even those who plead guilty—with post-conviction relief, filed an MAR and requested an evidentiary hearing in light of Ms. Goins' recanting affidavit. The trial court denied the MAR without an evidentiary hearing on the basis that Ms. Goins' "affidavit is not recanted testimony or newly discovered evidence."

The majority dismisses Mr. Brown's appeal at the *certiorari* stage for lack of merit, reasoning that relief on the basis of newly discovered evidence is wholly unavailable to defendants who plead guilty or enter *Alford* pleas when they are convicted without receipt of sworn "testimony."[4] Because I believe the majority's

---

[3] The State's recitation of the facts at the plea hearing expressly recognized that Ms. Goins' statement was critical to its murder case and in shoring up Mr. Danzy's credibility: "[T]hat is the factual basis for the murder charge. . . . [I]f it had gone to trial, it would have been basically two against one on that. And so, of course, none of the State's witnesses would have been, you know, saints, but then again we've got two folks whose proffers are very, very consistent[.]"

[4] Notably, "[s]worn testimony" may provide the necessary factual basis for a trial court's acceptance of an *Alford* or guilty plea. N.C. Gen. Stat. § 15A-1022(c)(4) (2021). The majority's analysis does not appear to bar an MAR challenging an *Alford* plea entered on sworn testimony should the testifying witness later recant those statements. Nor is it legally or logically apparent why a defendant who entered an *Alford* plea on sworn testimony may pursue an MAR based on recanted testimony while Mr. Brown may not; in both instances, the factual basis for the trial court's acceptance of the plea would be cast into doubt.

holding is premised on an inappropriately narrow reading of the relevant statute and leads to outcomes contrary to the legislature's intent both as to MARs and the basis required for entry of *Alford* and guilty pleas, I would vacate and remand the trial court's order for an evidentiary hearing.  I respectfully dissent.

## I.    ANALYSIS

Section 15A-1415(c) of our General Statutes provides that:

> Notwithstanding the time limitations herein, a defendant at any time after verdict may by a motion for appropriate relief, raise the ground that evidence is available which was unknown or unavailable to the defendant at the time of trial, which could not with due diligence have been discovered or made available at that time, including recanted testimony, and which has a direct and material bearing upon . . . the defendant's guilt or innocence.

N.C. Gen. Stat. § 15A-1415(c) (2021).  The majority seizes on the term "testimony" to hold that where no *sworn* witness statements appear of record, newly discovered evidence may not serve as a basis for post-conviction relief by MAR.[5]   But the

---

[5] To the extent that the word "verdict" bears upon the applicability of the statute, I would construe it consistent with our Supreme Court's holding in *State v. Alexander*, 380 N.C. 572, 587-89, 869 S.E.2d 215, 227-28 (2022), which addressed the availability of post-conviction DNA testing to defendants who were convicted following *Alford* or guilty pleas.  As discussed in greater detail *infra*, doing so is consistent with the remedial purposes of the MAR statutes, *cf. id.* at 587, 869 S.E.2d at 226-27, and avoids absurd results, *cf. State v. Alexander*, 271 N.C. App. 77, 80, 843 S.E.2d 294, 296 (2020) (noting that "to read 'verdict' in a strict, legal sense [in the post-conviction DNA testing statute] would lead to an absurd result, clearly not intended by the General Assembly," in that defendants who were convicted after a bench trial would not benefit), *aff'd*, 380 N.C. 572, 869 S.E.2d 215 (2022).  Relatedly, construing the statute to require a trial would run afoul of these same concerns; a defendant who loses at a pretrial motion to suppress hearing based on perjured testimony and subsequently enters a guilty plea could not have the conviction set aside under that reading, as the perjured testimony and plea both occurred prior to any trial.  This Court has implicitly rejected such a reading in at least one decision addressing this precise scenario. *State v. Hulse*, 214 N.C. App. 194, 714 S.E.2d 531, 2011 WL 3276757, at *2 (2011) (unpublished).

- 12 -

majority's narrow reading of "testimony" is not in keeping with the term's use in the

law, nor is it consistent with the remedial nature of the statute. *See Nationwide Mut.*

*Ins. Co. v. Chantos*, 293 N.C. 431, 440, 238 S.E.2d 597, 603 (1977) ("The Court will

not adopt an interpretation which results in injustice when the statute may

reasonably be otherwise consistently construed with the intent of the act." (citation

omitted)); *Burgess v. Joseph Schlitz Brewing Co.*, 298 N.C. 520, 524, 259 S.E.2d 248,

251 (1979) ("[T]his statute, being remedial, should be construed liberally, in a manner

which assures fulfillment of the beneficial goals, for which it is enacted and which

brings within it all cases fairly falling within its intended scope." (citations omitted)).

The word "testimony" has a broader definition in the law than the majority

ascribes. For example, in the context of the Confrontation Clause of the Sixth

Amendment and related jurisprudence:

> [T]estimonial evidence refers to statements that "were
> made under circumstances which would lead an objective
> witness reasonably to believe that the statement would be
> available for use *at a later trial*." Testimonial evidence
> includes affidavits, depositions, *or statements given to
> police officers during an interrogation*. "'Testimony,' in
> turn, is typically 'a solemn declaration or affirmation made
> for the purpose of establishing or proving some fact.'"

*State v. Ferebee*, 177 N.C. App. 785, 788, 630 S.E.2d 460, 462-63 (2006) (emphasis

added) (cleaned up) (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52, 158 L. Ed.

2d 177, 192-93 (2004)). As such, "testimony" is not strictly understood as an in-court

statement given under oath; instead, "*[a]n accuser who makes a formal statement to*

*government officers bears testimony . . . .* The constitutional text [of the Sixth Amendment] . . . thus reflects an especially acute concern with a specific type of *out-of-court statement.*" *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 192-93 (emphasis added).[6] This broader understanding of the word "testimony," particularly in the context of unsworn statements given to law enforcement, is deeply rooted in history:

> Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard. Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of oath was not dispositive.

*Id.* at 52, 158 L. Ed. 2d at 193. The criminal law of this State makes numerous references to the clear concept of "unsworn testimony" outside the context of the Sixth Amendment. *See, e.g., State v. Gee*, 92 N.C. 756, 762 (1885) (observing that when a witness testifies at trial without taking an oath, "it is as much the duty of counsel to see that no unsworn testimony is received against the client . . . ."); *State v. Hendricks*, 138 N.C. App. 668, 671, 531 S.E.2d 896, 899 (2000) (holding that a defendant waived his argument that the trial court impermissibly allowed a victim to address the trial court during sentencing because "[d]efendant never objected at the hearing to [the victim's] unsworn testimony").[7]

---

[6] In *Davis v. Washington*, the Supreme Court quoted this language from *Crawford* as "testimony . . . thus defined." 547 U.S. 813, 824, 165 L. Ed. 2d 224, 238 (2006).

[7] This concept of "unsworn testimony" also exists in Sixth Amendment jurisprudence. *See Davis*, 547 U.S. at 826, 165 L. Ed. 2d at 239 (noting that the Sixth Amendment would prohibit

Reading N.C. Gen. Stat. § 15A-1415(c) together with the statutory requirements of N.C. Gen. Stat. § 15A-1022(c) further leads me to conclude that Mr. Brown may seek relief by MAR following his tender—and the State and trial court's acceptance—of an *Alford* plea.  Under that latter statute, "[t]he judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea."  N.C. Gen. Stat. § 15A-1022(c).

While it is true that "[t]he statute does not require the trial judge to elicit evidence from each, any or all of the [statutorily] enumerated sources . . . [and] may consider any information properly brought to his attention," *State v. Sinclair*, 301 N.C. 193, 198, 270 S.E.2d 418, 421 (1980) (cleaned up), our Supreme Court has also observed that, "in enumerating these five sources, the statute contemplates that some substantive material independent of the plea itself appear of record which tends to show that defendant *is, in fact, guilty*." *State v. Agnew*, 361 N.C. 333, 336, 643 S.E.2d 581, 583 (2007) (emphasis added) (cleaned up).  Thus, while a guilty plea absolves the State of establishing the defendant's guilt beyond a reasonable doubt, *State v. Hart*, 287 N.C. 76, 83, 213 S.E.2d 291, 296 (1975), the statute requires the trial court to accept the plea on an independent factual basis to try and ensure that the pleading defendant *is actually guilty*.  *Agnew*, 361 N.C. at 336, 643 S.E.2d at 583.  And while

---

"having a note-taking policeman *recite* the unsworn hearsay testimony of the declarant, instead of having the declarant sign a deposition.").  But as the above North Carolina caselaw demonstrates, the idea of "unsworn testimony" is not unique to that context.

the factual summary by the prosecutor may sometimes support this independent factual basis for the plea, that summary must nonetheless contain information *of evidentiary value. See State v. Robinson*, 381 N.C. 207, 219, 872 S.E.2d 28, 37 (2022) ("Without *evidence* of a distinct interruption in the assault, the trial court did not have a sufficient factual basis upon which to sentence defendant to separate and consecutive assault sentences [pursuant to the guilty plea]." (emphasis added)).

In short, the independent factual basis required by N.C. Gen. Stat. § 15A-1022(c) serves to satisfy the trial court's, the State's, and the wider public's interest in convicting the person that actually committed the crime as disclosed by some evidentiary information indicating the defendant's guilt. The MAR statute, in turn, likewise seeks to ensure that only guilty parties are punished by allowing defendants to challenge their convictions based on newly discovered evidence, "including recanted testimony, and which has a direct and material bearing upon . . . the defendant's guilt or innocence." N.C. Gen. Stat. § 15A-1415(c). These aligned purposes, considered in *pari materia*, lead me to disagree with the majority (and by extension the trial court) that Mr. Brown is not entitled to an evidentiary hearing by MAR based upon a sworn affidavit from an eyewitness recanting a testimonial statement that established the independent factual basis for the plea. *Cf. State v. Brigman*, 178 N.C. App. 78, 94-95, 632 S.E.2d 498, 508-09 (2006) (holding an MAR premised on a witness's recanted testimony required resolution by evidentiary

hearing); *State v. Howard*, 247 N.C. App. 193, 211, 783 S.E.2d 786, 798 (2016) (vacating and remanding an MAR order under that same rationale).

Of course, none of this is to say that Mr. Brown is truly guilty or innocent, that Ms. Goins' recanting affidavit is true or false, or that Mr. Danzy was or was not the shooter. We are not a fact-finding court, and those are factual questions for resolution by a finder of fact through the weighing of evidence and determinations of credibility. But the MAR statute, through N.C. Gen. Stat. § 15A-1415(c), affords Mr. Brown just such a procedure in the trial court, and I respectfully dissent from my colleagues' determination to the contrary.

## II. CONCLUSION

Consistent with the above, I do not believe that N.C. Gen. Stat. § 15A-1415(c)'s reference to "testimony," as a remedial statute with intentions that fairly encompass Mr. Brown's circumstance, necessarily precludes him from raising an MAR in this context. The word is not exclusively subject to the narrow definition provided by the majority, and in keeping with the clear intent of the General Assembly in enacting the MAR statute and N.C. Gen. Stat. § 15A-1022(c), I would allow Mr. Brown's petition for writ of *certioriari*, deny the State's motion to dismiss, and vacate and remand the trial court's order with instructions to conduct an evidentiary hearing concerning Ms. Goins' recanted testimonial statements.