## STATE v. CHARLIE JOHNSON.

### (Filed 11 May, 1927.)

**1. Homicide—Murder—Evidence—Corpus Delicti—Appeal and Error.**

Where a prisoner upon a trial for a homicide has been convicted of murder in the first degree under sufficient evidence to sustain the verdict, including that tending to show that he shot the deceased with a pistol, and the deceased threw up his hands and fell with "his brains working out of his head," with reference in the record to the death of the deceased which appears not to have been questioned on the trial as a result from the pistol shot: *Held,* the *corpus delicti* has been made sufficiently on appeal where the point has first been raised in the Supreme Court.

**2. Homicide—Murder—Evidence—Alibi—Questions for Jury.**

Where the defense of an alibi is relied on upon the trial for a homicide, conflicting evidence of the State as to whether one of its witnesses could have been correct in his testimony that he had seen the defendant at the place of the crime at its occurrence in connection with the testimony of another of its witnesses tending to show its impossibility, is one for the jury.

**3. Instructions—Criminal Law—Statutes—Special Requests—Appeal and Error.**

While the judge is required by our statute, C. S., 564, to explain the law to the jury arising from the evidence in the particular case that is essential to constitute a homicide, it is required of the prisoner to offer a request for special instructions as to its application in more specific detail, when the charge is substantially correct.

**4. Evidence—Criminal Law—Character—Instructions.**

Where the prisoner on trial for a homicide has admitted when a witness in his own behalf, that he had been imprisoned several times for breaking the criminal law in other and minor offenses, an instruction stating these admissions and confining them as evidence only in relation to the truth of his other testimony is not error.

**5. Instructions—Contentions—Appeal and Error.**

Where the trial judge has stated the contentions of the opposing party, the appellant insisting upon a prejudicial error therein must have called it to the attention of the judge at the time to afford him an opportunity for correction, or the matter will not be considered on appeal.

**6. Appeal and Error—Instructions—Presumptions.**

Where the instructions of the trial judge to the jury are not made to appear in the record on appeal, they will be presumed to have been correctly given.

**7. Appeal and Error—Harmless Error—Instructions—Evidence.**

Where the judge in his instructions to the jury correctly refers to evidence, but as having been testified to by a witness by name, whose name does not appear in the record on appeal, an exception taken for the first time in the Supreme Court will not be considered.

**8. Appeal and Error—Objections and Exceptions—Briefs.**

Exceptions not referred to in the appellant's brief will be deemed to have been abandoned on appeal.

CRIMINAL ACTION, tried before *Webb, J.,* and a jury, at October Term, 1926, of MECKLENBURG. The prisoner was indicted and prosecuted for the murder of one John W. Daniels, and was duly convicted of murder in the first degree, whereupon sentence of death was pronounced upon the verdict, as provided in C. S., ch. 83, Art. 17, and he appealed to the Supreme Court, assigning for error the exceptions set forth in the opinion.

*Attorney-General Brummit and Assistant Attorney-General Nash for the State.*

*Tom P. Jimison, Flowers & Boyd, and Preston & Ross for the prisoner.*

ADAMS, J. The evidence offered by the State tended to show that at the time of the trial the prisoner was about forty years of age, had been married twenty years, and had spent one-half his married life in prison. He was released on 16 April, 1926, and the next day returned to his dwelling at 506 East First Street, in the city of Charlotte, then occupied by his wife, his children, and his son-in-law. His house was on one side of the street and on the other side, in a diagonal direction, was Kelly's Market. This market and the store of the deceased were on the same lot. Soon after his return to Charlotte, the prisoner, in the presence of J. D. Oliver, said that the deceased had "turned him up" for assaulting one of the guards when he escaped from prison, had called the police, and that "he was going to kill him for it." At midnight, 5 June, 1926, as the deceased, with a package in his hand, came from Kelly's Market the prisoner appeared, crossed the street, met the deceased, and shot him with a pistol.

The defense was the general plea, based upon an alibi. The prisoner and the members of his family who testified in his behalf said that he came home in the afternoon, ate his meal, took a bath, retired at half past nine, and remained in bed until a few minutes after the homicide, when his wife waked him; that he did not have a pistol; that his relations with the deceased had been friendly; that he had made no threat, and that he did not fire the fatal shot.

In homicide the *corpus delicti* consists of two fundamental facts, the death and the criminal agency as its cause; and upon the State rests the burden of proving each of these facts beyond a reasonable doubt. As a rule, it is not enough merely to show that the body is missing; there must be proof also of death. Clark's Crim. Law, 158; *S. v. Long,* 2 N. C., 456; *S. v. Williams,* 52 N. C., 446. Accordingly, the prisoner

first contends that the State has offered no adequate proof that the wound was mortal. This position is based upon a hyper-critical interpretation of the evidence. In addition to direct testimony that the prisoner shot John W. Daniels in the head with a pistol, that Daniels threw up his hands and fell on his face, and that "his brains worked out of his head," there are references in the record to the "death of the deceased," and to the time of the "killing." That death instantly followed the infliction of the wound seems not to have been questioned at the trial, and the point now made that proof of the *corpus delicti* is wanting is manifestly without merit.

Subject to the prisoner's exception, evidence was admitted which tended to show that about three months before the homicide the prisoner declared his intention and purpose to kill the deceased, the assigned reason being that the deceased had caused him to be returned to the chain-gang after he had escaped. The prisoner not only objected to the introduction of the evidence, but afterwards moved to strike it from the record. He now insists that according to the testimony of F. B. Blythe, foreman of the convict camp, he was released from prison 16 April, 1926, and therefore could not have been in Charlotte at the time the declaration was alleged to have been made. Oliver, who testified as to the declaration, said that if he was mistaken as to the date, he was not mistaken as to the man. Whether Oliver was mistaken was a question for the jury; the testimony, though contradicted, was none the less competent. But it is contended for the prisoner that it was the duty of his Honor in charging the jury to direct attention to the conflict between the testimony of Oliver and Blythe; that this was not done, and that the failure to do so is reversible error. Specifically, it is contended that the judge did not state in a plain and correct manner the evidence in the case, and declare and explain the law arising thereon. C. S., 564. Both in criminal and in civil causes it is the duty of the trial judge to present every substantial and essential feature of the case embraced within the issue and arising on the evidence, and this without any special prayer for instructions to that effect; but when the judge has done this, if a litigant desires that some subordinate feature of the cause, or some particular phase of the testimony, be more fully explained, he should call the court's attention to it by appropriate prayers for instructions, or other proper procedure. *S. v. Merrick,* 171 N. C., 788; *S. v. Thomas,* 184 N. C., 757; *S. v. O'Neal,* 187 N. C., 22. If Oliver was incorrect as to the date of the alleged declaration, and Blythe was correct as to the time the prisoner was released, the conflict involved only a "subordinate feature of the cause" or a "particular phase of the testimony," concerning which the prisoner should have requested definite instructions. In the cases of Merrick and Thomas, new trials were granted because in each case a substantial feature of the law had been

omitted from the instructions given the jury; in *O'Neal's case* a new trial was refused for the reason that the exception related to a subordinate matter, in reference to which no special instruction had been requested. It should be observed, however, that the charge contains a complete statement of the prisoner's contentions, and his denial of the material circumstances on which the State relied. The cases last cited are also decisive authority for overruling the prisoner's exception to the instruction on the question of reasonable doubt. The instruction did not attempt a definition of the term, and this the prisoner assigns for error, although he made no request and tendered no prayer for a particular formula or a more comprehensive definition. *S. v. Lane,* 166 N. C., 333.

The following paragraph appears in the charge to the jury: "The defendant says and contends that while he has been a man of bad character, been convicted of offenses he has committed and put on the chaingang for quite a while, still, the defendant says and contends, that ought not to condemn him in this case, but that this case ought to be tried according to law and the fact that he has been on the chain-gang for other offenses ought not to prejudice your minds against him, and that you ought not to consider that; and the court charges you you ought not to consider that, except as affecting the credibility of his evidence when he was on the stand as to his statement as to where he was when it occurred, if it does affect his credibility."

The prisoner excepted to the clause, "The defendant says and contends that while he has been a man of bad character, convicted of offenses he has committed." This detached expression is one of several contentions which his Honor recited in summing up the evidence. Testifying in his own behalf, the prisoner said that for various offenses he had spent several years in prison, and the statement of the contention was merely preliminary to the positive instruction that the circumstances referred to were to be considered only as they should tend to affect his credibility. If the trial judge happens to misstate a contention, justice demands and the authorities require that he be given an opportunity to make the correction during the trial. *Walker v. Burt,* 182 N. C., 325; *Jordan v. Motor Lines, ibid.,* 559; *S. v. Reagan,* 185 N. C., 710; *S. v. Ashburn,* 187 N. C., 717. The principle applies also to the judge's statement of an admission. In *La Roque v. Kennedy,* 156 N. C., 360, the Court said: "We must assume that the judge correctly stated the admission of the parties, and if by inadvertence he did not, it ought to have been called to his attention at the time, and cannot be made the subject of exception for the first time in the case on appeal." *Hardy v. Mitchell,* 161 N. C., 351.

In his brief the prisoner sets out this excerpt from the charge to the jury: "And, then, there was a man by the name of Suggs. He stated

that on that same night, I believe, he was robbed, the night of the killing, and that he was robbed by this defendant, Johnson. He tells you what time of night it was; that he went down to the jail the next day and recognized Johnson as being the man who robbed him." The record contains no exception to this language. No objection was heard at the time; no exception was taken afterwards; no assignment of error sets it out. A careful perusal of the charge will show that it was one of a series of contentions given on behalf of the State. It is not said in the brief that a witness by the name of Suggs was not examined; only that the record does not disclose that any witness testified to these facts. It is apparent, however, that there was testimony to this effect, for not only did his Honor recite the fact, but submitted a minute recital of the circumstances, and then explicitly restricted the jury's consideration of the testimony to the question of the prisoner's whereabouts at the time of the homicide. The clause objected to seems to have been treated at the trial as of no special significance, calling for no exception in the stenographer's notes or in the statement of the case on appeal.

Several of the exceptions entered at the trial were not brought forward in the prisoner's brief, and are therefore taken as abandoned. Rule 28; *S. v. Bryson,* 173 N. C., 803. We have considered them, nevertheless, and are satisfied that they point out no substantial error. The experienced and learned judge who presided at the trial was careful to safeguard the rights of the prisoner, and to give him the benefit of every doubtful circumstance and of every legal principle to which he was entitled. The controversy turned almost entirely upon the question of identity—whether the prisoner took the life of the deceased, as the State contended, without justification or provocation, or whether, as he contended, he was at home with his family when the homicide occurred. The jury resolved the conflicting testimony against the prisoner, and we have found in the record no sufficient cause for disturbing the verdict of the jury or the judgment of the court.

No error.