### STATE v. TOM ELLIS, JR.

(Filed 4 January, 1933.)

**1. Criminal Law L e—Admission of nonexpert testimony as to cause of death held harmless, there being expert testimony to same effect.**

Where a nonexpert witness, after describing the wound, testifies that the deceased's death was caused by the "bullet that went through his head": *Held*, conceding that the testimony was technically within the exclusive field of experts, its admission was rendered harmless by the admission of subsequent testimony of a medical expert to the same effect.

**2. Criminal Law G r — Admission of written statement of eye witness held not error although witness had previously made inconsistent statements.**

Where an eye witness's narration of the circumstances of the killing of the deceased contains material variations or contradictions, and later he makes and signs a written statement and explains that his previous contradictions were due to fear of the defendant and that he wished to make a clean breast of it to the sheriff: *Held*, the written statement was competent evidence for the consideration of the jury.

**3. Criminal Law I g—Instruction will be construed as a whole.**

An instruction that the jury might consider the credibility of the witnesses, their prejudices, their means of knowing the facts, "or any other circumstances," will not be held for error for the use of the words "or any other circumstances" when construing the charge as a whole the other circumstances referred to were confined to the related evidence on the trial.

**4. Same—Statement of contentions held supported by evidence.**

Upon the trial for a homicide the judge's statement of the contention of the State, in his charge to the jury, relating to finding the body of the deceased at the instance of the defendant was excepted to on the ground that there was no evidence to support the contention: *Held*, under the facts of this case the evidence was sufficient to sustain the judge's statement of the contention.

**5. Same—Charge held to sufficiently explain substantial features of this case.**

In this case *held:* the charge of the court sufficiently pointed out and explained the substantive features of the case, and as to the subordinate features the prisoner should have aptly tendered prayers for special instructions, and an exception to the charge on the ground that it failed to comply with C. S., 564 is not sustained.

APPEAL by defendant from *Moore, J.,* at March Term, 1932, of DAVIE. No error.

The defendant was indicted for the murder of Willie Beauchamp and was convicted of murder in the second degree.

According to the State's evidence the defendant, the deceased, and Richmond Bailey were together when the homicide occurred. Bailey, testifying for the State, related the circumstances. He met the deceased at Advance about 8 o'clock Friday night, 19 February, 1932. At 11 o'clock they went to the home of the deceased for a short time and thence about midnight to one Hudson's. They stayed at Hudson's until one o'clock the next day when they started in the direction of Advance. They got some liquor at Hudson's and were drinking Friday night and Saturday morning. When they left there they had a quart in a bottle. They walked up the road and turning to the right near Ward's got a gallon of liquor in a straw stack. The deceased hid the liquor behind

a log in the woods. They walked on to a sawmill site and saw the defendant coming down the road in a Chrysler coupe. The car stopped; the defendant wanted some liquor; the deceased said he had a gallon in the woods. They went to the log and the defendant took a drink. He and the deceased had an argument about its being "copper liquor" and about his getting some of it "on what the deceased owed him." They went back through the woods, the defendant following the deceased and cursing. In his hand the defendant had a pistol, blue steel, black handle. They stopped among some pines. The deceased had the liquor and the defendant claimed it. The jug was on the ground; the deceased stooped to pick it up; the defendant said if he took it he would kill him. Beauchamp stooped again and the defendant shot him with the pistol. The ball entered the left side of the face, ranged downward and backward, and went out on the back of his head near the right ear. The defendant took the liquor and turning to Bailey said, "Let's take this and pull a big one tonight."

The defendant did not testify, but he offered evidence in explanation and contradiction, and insisted that he was not guilty of the crime. He introduced evidence of several inconsistent statements made by Bailey implicating others and exonerating the defendant. Bailey admitted having made a number of written statements and having refused to give the name of the defendant "until he told the truth about it," but said he was afraid of the defendant because he had threatened his life.

The deceased was killed in the late afternoon of 20 February. The body was found on the following Thursday.

From the judgment pronounced upon the verdict the defendant appealed, assigning error.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*A. C. Bernard and B. C. Brock for defendant.*

ADAMS, J. After describing the wound the first witness for the State testified that Beauchamp's death had been caused by "the bullet that went through his head." He had not qualified as an expert witness and for this reason the defendant excepted to the testimony. Considered in the light of all the evidence the conclusion of the witness seems to be self-evident; but conceding for the moment that his opinion is technically within the domain of expert evidence (*S. v. Jones,* 68 N. C., 443), we think the error, if any, was cured by testimony subsequently offered by the defendant. Dr. Greene, a witness for the defendant, made an examination of the dead body. He said the caliber of the pistol was

38 or 44, the diameter of the wound as large as that of a lead pencil, and the place of exit the size of a nickel. This wound, he asserted, could have produced instant death and the only other wound he found was not sufficient to kill. This is the defendant's evidence and from it only one deduction can be made: death was caused by the pistol shot. The first, second and thirteenth exceptions are therefore overruled. *S. v. Bowman,* 78 N. C., 509; *S. v. Stewart,* 156 N. C., 636.

Before the ninth day of March, Richmond Bailey, the principal witness for the State, had made several statements in regard to the homicide which were inconsistent, if not positively contradictory. He urged as a reason his fear of the defendant, who "with an anathema in the corner of his eye" had repeatedly stressed such reminders as these: "If you ever tell it, you have told your last"  . . .  "If you ever tell this, off goes your head." At the time mentioned Bailey told the sheriff he wanted to take back what he had previously said "in some particulars" and to make a clean breast of the whole matter. He then gave the officer a written, signed, and corrected statement of the facts which was read to the jury. The defendant excepted. The question arose in *S. v. Grier, ante,* 586, and was resolved against the contention of the appellant, the decision in that case disposing of the eighth and ninth exceptions.

The court instructed the jury that they were at liberty to consider the credibility of the witnesses, their interest in the result of the verdict, their sympathy, their prejudice, their means of knowing the facts, "or any other circumstances." The defendant excepted to the last clause on the ground that it includes all circumstances whether in evidence or not; but the objection is removed by other instructions restricting the deliberation of the jury to circumstances which, having been offered in evidence, tended to "throw light upon the matter." An exception of this sort must be considered in connection with the entire charge and is not to be determined by detaching clauses from their appropriate setting. *S. v. Exum,* 138 N. C., 600; *S. v. Tate,* 161 N. C., 280; *S. v. Lee,* 192 N. C., 225.

The twenty-second exception relates to the court's statement of a contention made by the State in reference to the finding of the dead body several days after the commission of the homicide. The basis of the exception is the alleged want of evidence upon which to rest the contention. The crucial point is whether there is evidence tending to show that the body was "discovered" at the instance of the defendant. Bailey testified: "We didn't have a conversation about the body going on, but we had one coming back. I don't know how he (the defendant) brought it up now, but he asked me a good one to tell to go in and find the body and keep him out of it; go in there and find it and say nothing about it,

and I told him I didn't know." Dr. Greene said: "I was one of the first ones to get to the scene where the dead body was found. Mr. Thomas Ellis, Sr., told me that there was a dead man up there in the woods. I was at Mr. Ellis's. Mrs. Charlie Ward and Mrs. Samuel Hege found the body. Mrs. Hege is Mr. Ellis's daughter." Upon consideration of all the evidence on this subject we are unable to say that there is none in support of the contention, at least so far as it concerns the defendant.

It is argued that the trial court disregarded the provisions of C. S., 564, particularly in failing to refer to an alleged combat between the deceased and the defendant before the shot was fired and in failing to apply the law to certain phases of the evidence. With respect to the evidence the charge is sufficient, and as to the instruction relating to manslaughter the defendant has no just cause of complaint. The charge points out and explains the substantive features of the case and in reference to those which were subordinate it was incumbent upon the defendant to make proper request for special instructions. *S. v. Merrick,* 171 N. C., 795; *S. v. O'Neal,* 187 N. C., 22; *S. v. Johnson,* 193 N. C., 701.

There are other exceptions, either formal or taken as a matter of precaution, which call for no special comment. We find

No error.