Criminal prosecutions tried upon indictments (1) charging the defendants, W. H. Smith, Avery Gunter, H. B. Lipscomb, J. R. Bull, Otis Kessler and six others, in one bill, with conspiracy feloniously to burn and with burning a certain Mack tractor and trailer, the property of G. and M. Motor Transportation Company of the value of $4,000 and a cargo of merchandise on said trailer at the time, the property of Larasista Corset Company and another, of the value of $8,534.16, (2) charging the above named defendants and five others, in a second bill, with the felonious burning of the tractor, trailer and cargo as described, and (3) charging the above named defendants and four others, in a third bill, with armed felonious robbery, from the drivers, of the tractor, trailer and cargo as described, all against the forms of the statutes in such cases made and provided and against the peace and dignity of the State.
Without objection, the indictments were consolidated and tried together as they all arose out of the same transaction, or series of transactions, leading to a single end. S. v. Malpass, 189 N.C. 349, 127 S.E. 248.
At the time in question a strike was in progress among the drivers of the G. and M. Motor Transportation Company of Statesville, N.C. The following are mentioned in the record as officers of the truck drivers' union: S. M. Keyser, head of the union; J. R. Bull, shop steward; W. H. Smith, dues collector. Under the leadership of these officers, the truck drivers were engaged in picketing the office of the company in Statesville, the purpose being to prevent the company from operating its trucks until the demands of the drivers were met or satisfied. The strike was only partially effective.
On Saturday night, 21 June, 1941, about 10:00 or 11:00 p.m., two drivers, Howard Brown and Bristol Ayers, left Statesville with a G. and M. tractor and trailer loaded with a cargo of merchandise destined for Providence, R. I. When they reached Mack's Place, about 4 miles from Winston-Salem, they stopped for a midnight lunch. Here, they saw about a dozen automobiles and observed a number of people, "some dressed like a truck driver would be." Ayers said to Brown, "Let's go, two of them are Harris drivers and they might call Charlotte and we might have trouble." On leaving Mack's Place, Ayers got in the sleeper and Brown was driving. They were stopped near Stokesdale, approximately one-half mile over the Guilford County line, about 1:15 a.m., held up with pistols by a number of men who were traveling in three automobiles. The tractor, trailer and cargo were taken from them, driven some distance and later set on fire and destroyed.
Howard Brown testified: "One car pulled up to the side of the trailer and shot down my left rear tractor outside tire. I stopped on the shoulder of the road. . . . They told us to get out and sit on the embankment. . . . There was a crowd there, in my opinion approximately ten. . . . I *Page 403 
saw two pistols. . . . We were then told to get in one of the cars. . . . I don't believe anything was said until we got to Stokesdale. . . . We turned around and came back and stopped in front of the tractor and trailer. . . . Two of the men got out and shot holes through the two tanks, and one struck a match and threw it in gasoline on the ground. It started blazing up and they came back and jumped in the car and started on up the road. There was some discussion about what was to be done with me and Ayers — where we were to be taken. . . . Someone said they had seen us at Mack's Place. . . . We were finally taken to the city limits of Greensboro. . . . They said to keep quiet; to tell that it was a Plymouth instead of a Ford; and they said the union would take care of us. . . . We were told not to tell that we recognized anyone. . . . These boys said for us to keep quiet and the union would take care of us. We agreed to do so." The witness said he did not tell the whole story at first and disclaimed recognizing anyone, because he "didn't want the union to find out about me telling it."
Bristol Ayers testified that he had talked with Smith and Gunter on several occasions during the time they were picketing the G. and M.; that the conversations centered around the strike and joining the union; that he did join the union three weeks before the truck was burned; that he is not a member now.
On 16 July, 1941, J. R. Bull, one of the defendants, signed a confession in writing, in which he stated that at the instance of Keyser, he and others went out "to stop this G. M. Motor Company truck." Q. "Was anything said about shooting the tires or burning this truck?" A. "No, just stop it."
On being asked whether he joined in any conversation at the scene of the holdup, he answered, "No, nothing more than to say they shot the tires." Q. "Who told you to leave?" A. "They were at the back of the truck and said go ahead." Q. "Who told you to go ahead?" A. "Gunter or Smith said it. I went up the road and picked up the men." He named Smith, Gunter, Lipscomb, Kessler and others as being in the crowd that night. They left Charlotte in four automobiles and overtook the truck near Stokesdale.
The defendants, Lipscomb and Kessler, said the statement signed by Bull was true and that they wanted to sign it. The statement was admitted as against the defendants, Bull, Lipscomb and Kessler.
The driver of the truck testified that he recognized the defendant Smith at the scene of the holdup.
At about 6:00 or 6:30 p.m., 21 June, 1941, S. M. Keyser had four cars serviced at the Truckers' Terminal in Charlotte. One of them was Avery Gunter's car. The defendants, Gunter and Smith, were there at the time. An employee of the Terminal testified: "I put about 50 *Page 404 
gallons in the four cars. . . . He (Keyser) simply said to me to fill up the four cars, and he would pay for the gas, and after he left not to tell anybody where he had gone."
It is in evidence that the defendant Gunter borrowed a pistol from E. R. Caldwell "sometime during the past year," which had a rusty spot on the side where the thumb rests. He had not returned it at the time of the trial. It was identified by the witness. When Gunter was arrested, the pistol was found in his house.
At the close of the State's evidence the defendants, and each of them, demurred and moved for judgment of nonsuit on each and every count in each and every bill of indictment. Overruled as to each and all of the above named defendants. Exceptions. The defendants offered no evidence.
(The actions were dismissed as to the defendants, H. J. Elmore, Jr., Kelly Watts, and Ralph Barton. Order of abatement was entered as to the defendant S. M. Keyser, who had died before the case was called for trial. Since the trial and pending the appeal, the defendant, C. R. Wallace, has died.)
Verdict: Guilty as to each defendant on each charge in each bill of indictment.
Judgments as to each defendant: Imprisonment in the State's Prison for a period of not less than 6 nor more than 9 years, (1) on the bill charging conspiracy, the same as to each defendant, (2) on the bill for burning the truck, to run concurrently with the sentence on the bill charging conspiracy, and the same as to each defendant, (3) on the bill charging armed robbery, to run concurrently with the sentence on the bill charging conspiracy.
The above named defendants appeal, assigning errors.
The record contains 116 assignments of error based on 125 exceptions. Obviously they cannot be treated separately in an opinion without extending it to a "burdensome and intolerable length." S. v. Lea, 203 N.C. 13,164 S.E. 737. However, none has been overlooked; all have been duly examined and considered. The principal reasons inducing our conclusions on the main exceptions follow:
I. The defendants challenge the sufficiency of the evidence to warrant a conviction on the indictment charging a conspiracy to burn the property as described, it appearing from the confessions, offered by the State, that the antecedent arrangement among the defendants was to "go out *Page 405 
and stop the truck," not to burn it. S. v. Trammell, 24 N.C. 379. This, they say, is binding on the prosecution, S. v. Cohoon, 206 N.C. 388,174 S.E. 91, and constitutes a fatal variance between the indictment and the proof, or a total failure of proof. S. v. Harbert, 185 N.C. 760,118 S.E. 6; S. v. Gibson, 169 N.C. 318, 85 S.E. 7; 11 Am. Jur., 567.
There are two answers to the position.
In the first place, authority may be found for the holding that where there is a conspiracy to engage in an unlawful enterprise, e.g., the forcible stopping of a truck on the highway, and the means are not specifically agreed upon or understood, each conspirator becomes responsible for the means used by any of the conspirators in the accomplishment of the purpose in which they are all engaged at the time. S.v. McCahill, 72 Iowa 111; S. v. Powell, 168 N.C. 134, 83 S.E. 310. If many engage in an unlawful conspiracy, to be executed in a given manner, and some of them execute it in another manner, yet their act, though different in the manner, is the act of all who conspired. S. v. Bell,205 N.C. 225, 171 S.E. 50; 1 Bishop on Crim. Law (9 Ed.), 465.
And the liability also extends to acts not intended or contemplated as a part of the original design, but which are a natural or probable consequence of the unlawful combination or undertaking. S. v. Williams,216 N.C. 446, 5 S.E.2d 314; S. v. Beal, 199 N.C. p. 294,154 S.E. 604; 1 Brill's Cyclopedia Crim. Law, 464. The general rule is, that if a number of persons combine or conspire to commit a crime, or to engage in an unlawful enterprise, each is responsible for all acts committed by the others in the execution of the common purpose which are a natural or probable consequence of the unlawful combination or undertaking, even though such acts are not intended or contemplated as a part of the original design. S. v. Williams, supra;S. v. Powell, supra; S. v. Lea, supra; S. v. Stewart, 189 N.C. 340,127 S.E. 260. In the McCahill case, supra, it was held that where a large number of persons combined to drive employees from premises, and in carrying out the conspiracy, one committed a murder, the rest, who did not intend it, were also guilty. And in the Bell case, supra, where six persons were charged with conspiracy to burglarize a house, and a murder was committed by one of the conspirators in the attempted perpetration of the burglary, it was said that each and all of the conspirators were properly tried for the murder, albeit one of the defendants remained a distance from the scene of the crime.
Secondly, it appears from the charge of the court that the jury was required to find the conspiracy as laid in the indictment before a verdict of guilty could be rendered against the defendants, as witness the following: "The burden is on the State, under this bill of indictment, to satisfy *Page 406 
you gentlemen beyond a reasonable doubt that they conspired, that is, entered into a conspiracy to do what — an unlawful act, yes, to do an unlawful act, but you want to find, gentlemen, more than to do an unlawful act. You want to find that they conspired to burn the property." By this, the court intended to say, and did say, the State was required to prove the conspiracy as laid in the indictment. 15 C. J. S., 1137.
It is true, the defendants complain at the language, "you want to find," as an expression of opinion in violation of C. S., 564, but its significance, we apprehend, was to place upon the State the burden of proving the conspiracy as charged, and no more. There was evidence, outside of the confessions, to support the inference of a conspiracy as laid in the bill. This distinguishes it from the Cohoon case, supra.
II. The defendant Gunter insists that as the confessions were not admitted in evidence against him, his motion for judgment of nonsuit should be allowed under C. S., 4643. There is ample evidence to connect the defendant Gunter with the conspiracy. He had talked with Bristol Ayers on several occasions about the strike. He was at the Truckers' Terminal with his car on the evening of 21 June. Keyser and Smith were likewise there. Gunter's car was serviced with gas, and Keyser paid the bill. He had also borrowed a pistol from E. R. Caldwell some time prior thereto. Smith went from the Terminal to the scene of the holdup at the instance of Keyser, and the jury has concluded that Gunter was there under the same arrangement. The record supports the conclusion. On demurrer to the evidence, the court's inquiry is directed to its sufficiency to carry the case to the jury or to support a verdict, and not to its weight or to the credibility of the witnesses. S. v. Rountree, 181 N.C. 535, 106 S.E. 669. The jury alone are the triers of the facts. S. v. Anderson, 208 N.C. 771,182 S.E. 643. We are not permitted to weigh the evidence here. S. v. Fain,106 N.C. 760, 11 S.E. 593.
One who enters into a criminal conspiracy, like one who participates in a lynching, or joins a mob to accomplish some unlawful purpose, forfeits his independence and jeopardizes his liberty, for, by agreeing with another or others to do an unlawful thing, he thereby places his safety and security in the hands of every member of the conspiracy. S. v. Williams,216 N.C. 446, 5 S.E.2d 314. The acts and declarations of each conspirator, done or uttered in furtherance of the common, illegal design, are admissible in evidence against all. S. v. Ritter, 197 N.C. 113,147 S.E. 733. "Everyone who enters into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others, in furtherance of such common design." S. v. Jackson, 82 N.C. 565;S. v. Anderson, 208 N.C. 771, 182 S.E. 643. *Page 407 
III. The defendants, Bull, Lipscomb and Kessler, challenge the voluntariness of the Bull confession and its approval by Lipscomb and Kessler. The matter was the subject of inquiry before the court in the absence of the jury. The court found, upon competent evidence, that the statement, and its approval, had been made freely and voluntarily. It was thereupon admitted in evidence against the named defendants.
Speaking to the subject in S. v. Moore, 210 N.C. 686, 188 S.E. 421, it was said: "In this jurisdiction, the competency of a confession is a preliminary question for the trial court, S. v. Andrew, 61 N.C. 205, to be determined in the manner pointed out in S. v. Whitener, 191 N.C. 659,132 S.E. 603. The court's ruling thereon will not be disturbed, if supported by any competent evidence. S. v. Stefanoff, 206 N.C. 443,174 S.E. 411; S. v. Christy, 170 N.C. 772, 87 S.E. 499; S. v. Page,127 N.C. 512, 37 S.E. 66; S. v. Gosnell, 208 N.C. 401, 181 S.E. 323."
IV. In reciting Gunter's contentions to the jury, particularly in respect of the pistol, the court used the following language: "He said it had a rusty place on it at the handle and the witness from Richmond County testified that Gunter got a pistol from him with a rusty place. He admits that would be a little suspicious, but he testified the witness from Richmond County said he let him have a pistol with a rusty place and the witness said he believed that was the pistol."
This excerpt forms the basis of one of defendant's exceptive assignments of error, and, standing alone, it may be subject to some criticism. It is to be noted, however, the court was stating the contentions of the defendant. Attention had previously been called to the evidence that Gunter had the pistol "at his house, not at the burning," and immediately the court continued, "that no one testified that was the pistol the truck driver saw, and he says that is the only evidence against him, and he says that ought not to satisfy you beyond a reasonable doubt," etc. Taken in its setting, and the fact that the inaccuracy was not called to the court's attention, it would seem that it could hardly be held for reversible error.S. v. Sinodis, 189 N.C. 565, 127 S.E. 601. An error in stating the contentions of a party should be called to the court's attention in time to afford an opportunity of correction, otherwise it may be regarded as waived or as a harmless inadvertence. S. v. Whitehurst, 202 N.C. 631,163 S.E. 683; S. v. Johnson, 193 N.C. 701, 138 S.E. 19; S. v. Barnhill,186 N.C. 446, 119 S.E. 894; S. v. Baldwin, 184 N.C. 789, 114 S.E. 837.
The defendants also point to the following instruction as erroneously stating the quantum of proof: "Now, gentlemen, the burden is on the State to satisfy you gentlemen that there was a conspiracy." The complaint directed against this instruction is that the "burden of satisfaction" *Page 408 
falls short of "beyond a reasonable doubt," the degree or intensity of proof required in a criminal prosecution. S. v. Schoolfield, 184 N.C. 721,114 S.E. 466; Williams v. B. L. Asso., 207 N.C. 362,177 S.E. 176; Speas v. Bank, 188 N.C. 524, 125 S.E. 398. It is true that in criminal cases, upon a plea of traverse, proof of the guilt of the accused is required to be "beyond a reasonable doubt." S. v. Singleton,183 N.C. 738, 110 S.E. 846. And if the court had said no more on the subject than is contained in this instruction, quite a serious question would have been presented. But as already noted, in paragraph I above, the degree of proof required of the State to establish the conspiracy was correctly stated as "beyond a reasonable doubt." The rule is, that exceptions to isolated portions of the charge will not be sustained, when considered contextually or as a whole, the charge correctly states the law.S. v. Williams, 219 N.C. 365, 13 S.E.2d 617; S. v. Elmore,212 N.C. 531, 193 S.E. 713; S. v. Walker, 193 N.C. 489, 137 S.E. 429. "An exception of this sort must be considered in connection with the entire charge and is not to be determined by detaching clauses from their appropriate setting" — Adams, J., in S. v. Ellis, 203 N.C. 836. The charge is to be considered contextually. S. v. Lee, 192 N.C. 225,134 S.E. 458.
There are other exceptions to the charge, all of which may easily be resolved in favor of upholding the trial by the same formula of contextual consideration. This is the rule universally observed and followed in determining exceptions to the charge. S. v. Johnson, 219 N.C. 757,14 S.E.2d 792. A detailed examination of these exceptions would only result in the restatement of familiar principles. They are not sustained.
V. We conclude that no reversible error has been shown in respect of the trial of any of the defendants on the bill charging a conspiracy. Hence, it is unnecessary to consider the exceptions addressed to the trial on the other bills as the judgments are the same on all the bills and they are made to run concurrently. S. v. Beal, supra. It may be added, however, that the exceptions have been considered seriatim, and none has been found of sufficient merit to warrant a disturbance of the result as to any of the defendants on any of the indictments. Indeed, the exceptions to the trial on the bills charging the actual burning and armed robbery are less meritorious than those above considered in respect of the charge of conspiracy.
It is observed that the prosecution involves no rights arising out of the relationship of employer and employee. Indeed, whether such relationship exists is not pertinent to the inquiry. The record reveals a plain case of armed robbery and willful destruction of property as the result of an unlawful conspiracy. A jury of the vicinage has found, upon *Page 409 
competent evidence, that the defendants herein are the guilty parties. They have no just grounds to complain at the conduct of the trial. They duly made their appeals to the jury and lost. The verdicts and judgments will be upheld.
No error.