STATE v. CLYDE GRASS.

(Filed 7 April, 1943.)

**1. Criminal Law § 33—**

The competency of an alleged confession is a preliminary question for the trial court.

**2. Same—**

Confessions are to be taken as *prima facie* voluntary, and admissible in evidence, unless the party against whom they are offered allege and show facts authorizing a legal inference to the contrary.

**3. Same—**

In a prosecution for murder, where defendant confessed shortly after the homicide to officers, one of whom was the coroner, such confession is not inadmissible because defendant was not advised of his rights under C. S., 4561, the provisions of which are applicable only to preliminary judicial examinations.

**4. Same—**

When a confession is admitted in evidence and thereafter defendant testifies that he was drunk when the confession was made to officers, which the officers deny, a verdict of guilty will not be disturbed, no request having been made to strike or withdraw the confession from the consideration of the jury.

**5. Homicide §§ 27a, 27c—**

In a prosecution for murder a charge to the jury in these words, "and if you find that in shooting and killing the deceased he (accused) did so with premeditation and deliberation, that would constitute murder in the first degree," is not reversible error, when it appears from the charge in its entirety that the court properly instructed the jury in respect to the burden of proof and repeated the instruction several times.

APPEAL by defendant from *Pless, J.,* at October Term, 1942, of CABARRUS.

Criminal prosecutions tried upon indictments charging the defendant, in one bill, with the murder of W. A. Godwin, and in another, with the murder of Annie Lee Stafford, consolidated and tried together, as both homicides arose out of a single occurrence from shots fired in close succession.

The record discloses that the defendant and his wife owned a house in the mill village of Kannapolis, Cabarrus County, the title being vested in them as tenants by the entirety; that the defendant objected to his wife's relatives living with them and had ordered them to leave; that on the night of 1 October, 1942, the defendant came home and asked his wife if her father, W. A. Godwin, was there; that on being informed he, was, the defendant went into the room where his father-in-law and his

wife's sister, Annie Lee Stafford, were and opened fire, killing both of them.

There is evidence that the *feme* deceased was shot first, and that a struggle ensued between the defendant and his father-in-law before the latter was shot.

Later that night, the defendant told the officers, one of whom was the coroner of the county, "I went down there to kill them and that is what I done and there is one thing I regret about it, that I didn't kill my wife."

On the trial, the defendant contended that he shot his father-in-law in self-defense, and that his sister-in-law was accidentally hit. He stated that he did not remember confessing the crime and that the confession, if any, was made while he was drunk.

Verdicts: In No. 2326, wherein the defendant is charged with the murder of Annie Lee Stafford, "Guilty of murder in the second degree."

In No. 2326-A, wherein the defendant is charged with the murder of W. A. Godwin, "Guilty of murder in the first degree."

Judgments: In No. 2326, imprisonment in the State's Prison for a period of 30 years not to run concurrently with any other sentence and not to postpone or affect the sentence of death in the other case consolidated herewith.

In No. 2326-A, death by asphyxiation.

Defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*A. A. Tarlton and J. F. Sossomon for defendant.*

STACY, C. J.   We have here for determination, (1) the competency or admissibility in evidence of certain alleged confessions, and (2) the correctness of the charge.

The testimony of the officers, relative to statements made by the defendant shortly after the homicides, is challenged on two grounds, first, because the defendant was not cautioned or advised of his rights as required by C. S., 4561, and, second, for that the statements were made by the defendant while he was drunk.

First, in respect of the failure to inform the defendant that he was at liberty to refuse to answer any questions, and that such refusal could not thereafter be used to his prejudice, it is enough to say the provisions of C. S., 4561, are applicable only to preliminary judicial examinations. *S. v. Grier,* 203 N. C., 586, 166 S. E., 595.   Here, the questioning of the defendant was not in a judicial proceeding, as was the case in *S. v. Matthews,* 66 N. C., 106, cited and relied upon by the defendant.   *Cf. McNabb v. U. S.,* October Term, 1942, decided March 1, 1943.

Second, as to the alleged drunkenness of the defendant when the confessions were elicited, the challenge does not seem to have been made on this ground. It is true, the defendant later testified that he was drunk when questioned by the officers, which the officers denied, but there was no request to strike out the confessions or to withdraw them from the consideration of the jury, as was done in the case of *S. v. Anderson,* 208 N. C., 771, 182 S. E., 643.

The competency of an alleged confession is a preliminary question for the trial court, *S. v. Andrew,* 61 N. C., 205, to be determined in the manner pointed out in *S. v. Whitener,* 191 N. C., 659, 132 S. E., 603, and the court's ruling thereon is not reviewable on appeal, unless accompanied by some imputed error of law or legal inference. *S. v. Manning,* 221 N. C., 70, 18 S. E. (2d), 821.

It is to be noted the confessions are not assailed for involuntariness. "Unless challenged, the voluntariness of a confession will be taken for granted." *S. v. Wagstaff,* 219 N. C., 15, 12 S. E. (2d), 657. A free and voluntary confession by one guilty of a crime affords testimony of the highest credibility and usually of a character which may be easily verified. On the other hand, open and frank responses by innocent persons arrested under misapprehension are generally powerful aids in securing their prompt discharge from custody. "Confessions are to be taken as *prima facie* voluntary, and admissible in evidence, unless the party against-whom they are offered allege and show facts authorizing a legal inference to the contrary"—*Dillard, J.,* in *S. v. Sanders,* 84 N. C., 729.

The exceptions in respect of the rulings on evidence are not sustained.

We now turn to the defendant's principal exception, or the one upon which he chiefly relies. In charging the jury, the court used this expression: ". . . and if you find that in shooting and killing the deceased Godwin he did so with premeditation and deliberation, that would constitute murder in the first degree." The vice in this instruction, so the defendant contends, is that it incorrectly states the intensity of proof required to show the elements of premeditation and deliberation in a capital case. If the instruction stood alone, there might be substance to the exception. However, it appears from a reading of the charge in its entirety, that the court properly instructed the jury in respect of the burden of proof, and repeated the instruction several times. The State was required to prove the case in all of its elements "beyond a reasonable doubt," the degree of proof required in a criminal prosecution. *S. v. Schoolfield,* 184 N. C., 721, 114 S. E., 466. The *quantum* of proof was correctly stated in a number of instances. "An exception of this sort must be considered in connection with the entire charge and is not to be determined by detaching clauses from their appropriate setting"—*Adams, J.,* in *S. v. Ellis,* 203 N. C., 836, 167 S. E., 67. The charge is to be

construed contextually. *S. v. Lee,* 192 N. C., 225, 134 S. E., 458. So interpreted, the present charge appears to be free from successful challenge. *S. v. Smith,* 221 N. C., 400, 20 S. E. (2d), 360.

The remaining exceptions are equally resolvable in favor of upholding the trial, a course we are enjoined to pursue in balancing the scales between the State and the individual.

The jury rejected the defendant's plea of self-defense, which was mildly supported by the defendant, and strongly contradicted by the State's case. After arming himself with a gun, the defendant says, "I went over there to run him off," meaning that he went with a gun to run his father-in-law away from his home. This was in the middle of the night, about 2:00 a.m. The deceased was in bed at the time. Defendant says: "I woke him up and told him to get up and get his clothes on, he was getting out of there. When I called him he kinder raised up off his pillow on his elbows. . . . He scooped the covers all at once and came after me. . . . He was reaching for the gun barrel when I shot him. . . . Mrs. Stafford was shot some time during the wrestle, a few seconds after her daddy got hold of the gun."

The defendant admitted on cross-examination that he had been indicted 12 or 15 times, and that he had served three road sentences, one for whiskey, one for assaulting his wife, and the last for manufacturing whiskey. "I haven't missed a day for the last six months drinking." However, it was not contended that the defendant was drunk at the time of the shooting. He says he took several drinks after the shooting and was drunk when he made the statements to the officers, albeit the officers failed to detect any drunken condition. The case presented was largely one of fact determinable alone by the trial court and the jury.

No reversible error has been made to appear, hence the verdicts and judgments will be allowed to stand.

No error.