STATE v. JOHN ROBERT BRIDGES, ALIAS JACK BRIDGES.

(Filed 30 November, 1949.)

**Homicide § 27b: Criminal Law §§ 53b, 81c (2)—Charge construed contextually held not prejudicial as withdrawing question of innocence from jury.**

Defendant entered a plea of not guilty. Defendant's confession, admitted in evidence without objection, disclosed a clear case of premeditated and deliberate murder. The State contended for a verdict of murder in the first degree and defendant contended that a verdict of murder in the second degree would meet the ends of justice. The court correctly charged on the presumption of innocence and in several portions of the charge instructed the jury that it was to pass upon the guilt or innocence of defendant, but in the final instructions charged the jury to take the case and say whether defendant was guilty of murder in the first degree or murder in the second degree. *Held:* The failure of the court to charge in each instance that the jury might find the defendant not guilty does not constitute prejudicial error in the light of the record, construing the charge in its entirety.

ERVIN, J., dissenting.

SEAWELL, J., concurs in dissent.

BARNHILL, J., concurring.

APPEAL by defendant from *Burgwyn, Special Judge,* April Term, 1949, of WAKE.

Criminal prosecution on indictment charging the defendant with the murder of one Keston Norris Privette.

The record discloses that on 7 February, 1949, the defendant lured the deceased from his home, bludgeoned him over the head with the stock of a rifle, and buried him, while still alive, in a shallow hole or grave which the defendant previously had prepared for the purpose. He died from suffocation. The defendant and the wife of the deceased then fled to the State of Georgia. While under arrest in that State, the defendant made a confession to the officers in which he freely admitted the atrociousness of the crime and the sordid details of his illicit relations with the youthful wife of the deceased. Under this confession, which is not now challenged, a clear case of premeditated and deliberate murder is fully made out.

While the defendant entered a plea of not guilty, the case was argued to the jury on the opposing contentions, first by the State that a verdict of murder in the first degree should be returned against the defendant, and, secondly, by the defendant that a verdict of murder in the second degree would meet the ends of justice.

In opening his charge to the jury, the trial court instructed them that they were to pass upon the "guilt or innocence of the prisoner" and to say by their verdict the degree of guilt the prisoner has incurred by reason of the homicide in question, "or to say by your verdict that he is not guilty of any crime," as you may find the facts to be from the evidence in the case and under the rule of law which the court will undertake to give you for your guidance.

Then when the court came to consider the different degrees of an unlawful homicide, he addressed the following inquiry to the defendant and his counsel:

"I do not understand—and if I misunderstand I wish now to be corrected—that the defendant contends, either in his own proper person or through counsel, that this jury should render any less verdict than that of murder in the second degree: Is that correct, gentlemen?

"Mr. Holding: That is correct.

"Mr. Ehringhaus: That is correct, sir.

"The defendant bowed his head in affirmation.

"Let the record so show."

Later in the charge, the jury was again admonished that the defendant "comes into court surrounded and clothed with a presumption of innocence which remains around and about him throughout the entire case unless and until the State has satisfied you, the jury, of his guilt beyond a reasonable doubt."

Finally, the court concluded his charge to the jury as follows:

"Take the case and say whether or not you find the defendant guilty of murder in the first degree and, if so, whether or not you desire to recom-

mend life imprisonment, or if you find him guilty of murder in the second degree." Exception.

Verdict: Guilty of murder in the first degree.

Judgment: Death by asphyxiation.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Moody for the State.*

*J. C. B. Ehringhaus, Jr., and Clem B. Holding for defendant.*

STACY, C. J.  The defendant has been convicted of murder in the first degree, without any recommendation from the jury, and sentenced to die as the law commands in such case.  He appeals, giving as his principal reason the failure of the court, in his final instruction to the jury, to permit an acquittal in case of a finding that the defendant had committed no crime.  For this position, the defendant relies upon the following cases: *S. v. Howell,* 218 N.C. 280, 10 S.E. 2d 815; *S. v. Redman,* 217 N.C. 483, 8 S.E. 2d 623; *S. v. Maxwell,* 215 N.C. 32, 1 S.E. 2d 125; *S. v. Hill,* 141 N.C. 769, 53 S.E. 311; *S. v Dixon,* 75 N.C. 275.  He stresses the *Howell and Maxwell cases* as being quite pertinent and directly in point.

Viewing the charge contextually, as required by many decisions, we are constrained to hold that it sufficiently meets the objection which the defendant now makes.  *S. v. Truelove,* 224 N.C. 147, 29 S.E. 2d 460; *S. v. Grass,* 223 N.C. 31, 25 S.E. 2d 193; *S. v. Harris,* 223 N.C. 697, 28 S.E. 2d 232; *S. v. Ellis,* 203 N.C. 836, 167 S.E. 67.

It is true, a more formal statement of the position would have been in order, but throughout the charge, the jury was admonished that a presumption of innocence surrounded the defendant which remained with him up to the rendition of an adverse verdict against him.  Considering the charge as a whole or in its entirety, we think it will do.  While it might have been more specific and direct on the point at issue, we are disposed to uphold the trial in the light of the record.

The meaning properly to be ascribed to the responses made by the defendant and his counsel to the court's inquiry during the charge is that there was no element of manslaughter in the case.  In this, they were quite correct.  There was no intention, however, to change the defendant's plea or to relieve the court of any duty which the law imposed upon him. *S. v. Grier,* 209 N.C. 298, 183 S.E. 272; *S. v. Merrick,* 171 N.C. 788, 88 S.E. 501; *S. v. Foster,* 130 N.C. 666, 41 S.E. 284.  The immediate purpose was to eliminate any question of manslaughter.  This part of the record may be put to one side as without material significance or bearing on the question here involved.

The question presented perhaps lends itself to much writing, but in the end it all comes to the interpretation to be placed on the entire charge. Construing it as without reversible error, we are disposed to overrule the exceptions and sustain the validity of the trial in the light of the whole record.

No error.

ERVIN, J., dissenting: The prisoner claims the right to a new trial on the ground that essential rules of criminal procedure were set at naught on his trial in the court below.

Candor compels the confession that it is not altogether easy to hearken to the prisoner's plea. The State's testimony tends to show that the prisoner coveted his neighbor's wife, and slew his neighbor with rare atrocity that his physical enjoyment of the wife's person might be exclusive. The very sordidness of the evidence strongly tempts us to say that justice and law are not always synonymous, and to vote for an affirmance of the judgment of death on the theory that justice has triumphed, however much law may have suffered. But the certainty that justice cannot long outlive law gives us pause; and the pause brings again to mind the ancient admonition of our organic law that "a frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty." N. C. Const., Article I, Sec. 29.

The system of criminal justice which prevails in North Carolina is a precious heritance from wise lawmakers of past generations, who observed that tyranny uses the forms of criminal law to destroy those that oppose her will, and who established certain basic rules of criminal procedure to protect the people against such oppression. They bottomed these rules upon the bedrock proposition that the right to trial by jury is the best security of the liberty of men, and they guaranteed such right to all defendants in criminal actions in the Superior Court by the constitutional declaration that "no person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful persons in open court." N. C. Const., Art. I, Sec. 13. It has been held by this Court without variableness or shadow of turning that when a defendant on trial in a criminal case in the Superior Court pleads not guilty to the charge against him, he may not thereafter, without changing his plea, waive his constitutional right to have the jury pass upon his guilt or innocence. *S. v. Muse,* 219 N.C. 226, 13 S.E. 2d 229; *S. v. Ellis,* 210 N C. 170, 185 S.E. 662; *S. v. Hill,* 209 N.C. 53, 182 S.E. 716; *S. v. Crump,* 209 N.C. 52, 182 S.E. 716; *S. v. Camby,* 209 N.C. 50, 182 S.E. 715; *S. v. Walters,* 208 N.C. 391, 180 S.E. 664; *S. v. Straughn,* 197 N.C. 691, 150 S.E. 330; *S. v. Crawford,* 197 N.C. 513, 149 S.E. 729; *S. v. Pulliam,* 184 N.C. 681, 114 S.E. 394; *S. v. Rogers,* 162 N.C. 656, 78 S.E. 293, 46 L.R.A. (N.S.)

38, Ann. Cas. 1914 A, 867; *S. v. Holt,* 90 N.C. 749, 47 Am. Rep., 544; *S. v. Stewart,* 89 N.C. 563.

The founders of our legal system intended that the constitutional right of trial by jury should be a vital force rather than an empty form in the administration of criminal justice. They realized that this could not be if the petit jury should become a mere unthinking echo of the judge's will. To forestall such eventuality, they clearly demarcated the respective functions of the judge and the jury in both civil and criminal trials in a familiar statute, which was enacted in 1796 and which originally bore this caption: "An act to secure the impartiality of trial by jury, and to direct the conduct of judges in charges to the petit jury." Potter's Revisal, Vol. 1, ch. 452. This statute, which now appears as G.S. 1-180, establishes these fundamental propositions: (1) That it is the duty of the judge alone to decide legal questions presented at the trial, and to instruct the jury as to the law arising on the evidence given in the case; (2) that it is the task of the jury alone to determine the facts of the case from the evidence adduced; and (3) that "no judge, in giving a charge to the petit jury, either in a civil or criminal action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury." This statute is designed to make effectual the right of every litigant "to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of a properly instructed jury." *Withers v. Lane,* 144 N.C. 184, 56 S.E. 855. Any statement by the judge from which the jury may infer what his opinion is as to the guilt of the accused violates both the letter and the spirit of this statute, and constitutes reversible error. *S. v. Maxwell,* 215 N.C. 32, 1 S.E. 2d 125; *S. v. Sparks,* 184 N.C. 745, 114 S.E. 755.

Those who fashioned the basic concepts of our law entertained an abiding belief that any fair system of criminal justice must insure the acquittal of innocent persons so far as that can be done by human agency. To accomplish this object, they created an unvarying rule that every defendant brought to trial on any criminal charge in any criminal case is to be presumed to be innocent of the crime charged against him. This presumption of innocence attends the accused at every stage of his trial, and shields him from conviction unless it is overcome by evidence satisfying the jury beyond a reasonable doubt of every element of the crime alleged. *S. v. Maxwell, supra; S. v. Carver,* 213 N.C. 150, 195 S.E. 349; *S. v. Ellis,* 210 N C. 166, 185 S.E. 663; *S. v. Shipman,* 202 N.C. 518, 163 S.E. 657; *S. v. Spivey,* 198 N C. 655, 153 S.E. 255; *S. v. McLeod,* 198 N.C. 649, 152 S.E. 895; *S. v. Allen,* 197 N.C. 684, 150 S.E. 337; *S. v. Boswell,* 194 N.C. 260, 139 S.E. 374; *S. v. Tucker,* 190 N.C. 708, 130 S.E. 720; *S. v. Arrowood,* 187 N.C. 715, 122 S.E. 759; *S. v. Singleton,* 183 N.C. 738, 110 S.E. 846; *S. v. Windley,* 178 N.C. 670, 100 S.E.

116. A judge commits prejudicial error if he gives the jury an instruction which deprives an accused of his presumption of innocence. *Gomila v. U. S.*, 146 F. 2d 372; *People v. Gerold*, 265 Ill. 448, 107 N.E. 165, Ann. Cas. 1916 A, 636.

Another basic rule of criminal procedure is embodied in the constitutional assurance that a defendant in a criminal prosecution shall "not be compelled to give evidence against himself." N. C. Const., Art. I, Sec. 11. This clause is the linguistic offspring of the Latin maxim *nemo tenetur seipsum accusare,* meaning that no man can be compelled to criminate himself. 14 Am. Jur., Criminal Law, section 144; 22 C.J.S, Criminal Law, section 649. The events giving rise to this clause and similar constitutional guaranties in other jurisdictions is epitomized in *Brown v. Walker,* 161 U.S. 591, 40 L. Ed. 819, 16 S. Ct. 644. The object of this provision is to secure a person who is or may be charged with crime from making compulsory revelations which could be used against him on his trial for the offense. *S. v. Hollingsworth,* 191 N.C. 595, 132 S.E. 667; *LaFontaine v. Southern Underwriters,* 83 N.C. 133.

The benefit of these procedural principles must be extended to all men with impartiality and inflexibility if the innocent are to be secured against the hazard of unjust conviction, and the State is to have a government of laws rather than one of men. Even the rain falls upon the just and the unjust alike. To be sure, these rules may on occasion delay the conviction of the guilty, or even permit them to go unwhipped of justice altogether. But that is, indeed, not too great a price to pay for so effective an insurance of the acquittal of the innocent.

This brings us to this question: Were these basic principles observed on the trial of the prisoner in the court below? My interpretation of the transcript of the record on appeal compels me to answer this inquiry in the negative.

The record proper discloses that the prisoner was arraigned in the court below with the ancient and awesome formality which obtains in trials for capital felonies in the Superior Court, and that he thereupon entered a plea of not guilty, which was not withdrawn at any subsequent stage of the trial. Furthermore, the case on appeal shows that he did not take the stand as a witness in his own behalf.

At the beginning of the charge, the court told the jury, in substance, that it was authorized to return one of three different verdicts, *i.e.,* guilty of murder in the first degree, guilty of murder in the second degree, or not guilty, depending entirely upon what it found the facts of the case to be from the testimony adduced. This instruction was clearly correct, for there was no evidence in the case justifying a conviction for manslaughter. But it was nullified in three subsequent parts of the charge, which form the bases for Exceptions Nos. 15, 32, and 33.

Exception No. 15 is addressed to this instruction: "I instruct you, however, that you have the right to render under the evidence in this case one of two verdicts. You may find the defendant guilty of murder in the first degree, or you may find him guilty of murder in the second degree." Exception No. 32 challenges a portion of the charge in which the court advised the jury that it would be its duty "to render a verdict of guilty of murder in the second degree" in case it did not find accused guilty of first degree murder. Exception No. 33 covers the last paragraph of the charge, which was in these words: "Take the case and say whether or not you find the defendant guilty of murder in the first degree, and if so, whether or not you desire to recommend life imprisonment, or if you find him guilty of murder in the second degree. Take the case, gentlemen."

Soon after giving the jury the instruction covered by Exception No. 15, the court paused in its charge and propounded this question to the prisoner and his counsel in the presence of the jury: "I do not understand—and if I misunderstand I wish now to be corrected—that the defendant contends, either in his own proper person or through counsel, that this jury should render any less verdict than that of murder in the second degree. Is that correct, gentlemen?" The case on appeal recites that counsel for the prisoner thereupon replied: "That is correct"; and that the prisoner "bowed his head in affirmation."

If the jury had been permitted to rely on its own judgment, it might well have had serious doubt as to the probative value of the affirmation of the somewhat unlettered prisoner that it should "not render any less verdict than that of murder in the second degree" in the absence of any indication that he had any notion as to the constituent elements of the several grades of felonious homicide. But the jury was substantially instructed by the court in later portions of the charge, to which the prisoner has reserved exceptions, that the prisoner admitted "he would be guilty of murder in the second degree upon the evidence which has been adduced by the State," and that the prisoner did not deny "that upon this testimony as introduced by the State the jury would be justified in convicting him of at least murder in the second degree."

It is manifest that substantial procedural rights of the prisoner were nullified at his trial.

The court ought not to have made its inquiry of the accused and his counsel in the presence of the jury. The question itself necessarily implied an assumption on the part of the court that the prisoner was not innocent, but, on the contrary, was guilty of no less a crime than that of murder in the second degree. When the court thus questioned the accused in the presence of the jury, it virtually forced an incriminatory admission from him notwithstanding he had refrained from taking the

stand as a witness and had a constitutional right not to be compelled to give evidence against himself.

The court gave its opinions as to what the testimony proved contrary to G.S. 1-180 in the portions of the charge which the prisoner assigns as error. This is true because the jury unavoidably inferred from these instructions that the court knew that the accused was guilty of no less a crime than second degree murder, and strongly suspected that he was actually guilty of first degree murder. Furthermore, the court charged the jury, in substance, in these same instructions that it had no legal power to acquit the prisoner, but was required by the law itself to convict him of either murder in the first degree or murder in the second degree. In so doing, the court deprived the accused of his presumption of innocence, and denied to him his constitutional right to have the issue of his guilt or innocence determined by the jury.

Neither the compulsory affirmation of the accused nor the statement of his counsel can be construed to be judicial admissions excusing such action on the part of the court. These matters did not withdraw this case from the operation of the fundamental principle that so long as a plea of not guilty stands in a criminal action on trial in the Superior Court, the jury alone is empowered to determine whether the testimony be true or false, and what it proves if it be true. *S. v. Hill*, 141 N.C. 769, 53 S.E. 311; *S. v. Riley*, 113 N.C. 648, 18 S.E. 168; *S. v. Dixon*, 75 N.C. 275. The prisoner could not admit or confess away the presumption that he was innocent, or waive the constitutional necessity for having the issue of his guilt or innocence decided by a jury by anything short of a plea of guilty, and no act, omission, or word of his or his counsel could constitute a plea of guilty to any offense embraced within the indictment unless it was accepted as such by the prosecution. There is no such thing in law as an unaccepted plea of guilty. In consequence, the contention of the State that the prisoner made an unaccepted plea of guilty of murder in the second degree, and that such unaccepted plea of guilty destroyed the presumption that he was innocent and disabled the jury to acquit him is untenable both in law and logic.

The State cites *S. v. Miller*, 197 N.C. 445, 149 S.E. 590, where this language is used in the opinion: "The prisoner, who testified that he was not drinking on the day in question, tendered a plea of murder in the second degree, but this was not accepted by the State. The appeal, therefore, presents the single question as to whether the evidence tending to show premeditation and deliberation is sufficient to warrant a verdict of murder in the first degree. We think it is."

The *Miller* case has no application whatever to the present appeal. An examination of the original record in that action discloses that the trial judge submitted the issue of the guilt or innocence of the accused

to the jury under a charge to which no exception was taken, and that the jury convicted the accused of first degree murder after a trial in which all basic procedural rules were observed. The only question raised by the assignments of error in the *Miller case* was the sufficiency of the State's evidence to support the first degree verdict, and the only decision made therein by this Court was that it was ample for that purpose. Both the original transcript and the opinion disclose the absolute accuracy of this ruling. It is true that counsel for the accused in the *Miller case* announced his willingness to submit his client for second degree murder during a colloquy with the court and the Solicitor occurring in the absence of the jury. This offer was rejected by the Solicitor, and was not communicated to the jury. In truth, it did not figure in the trial in any way whatsoever. The reference to the matter in the quoted portion of the opinion was evidently designed to emphasize that the only question under consideration was the sufficiency of the State's evidence to sustain the first degree verdict.

This cause ought to be tried anew in accordance with sound and time-honored procedural practices. It might well be that such a retrial would result in the same verdict and judgment. That possibility should not shape our action. What may be the ultimate fate of the prisoner in this case is of relatively minor importance in the sum total of things. In any event, his role on life's stage, like ours, soon ends. But what happens to the law in this case is of gravest moment. It must be realized that the consequences of the decision of this Court on this appeal will not be confined to the single prosecution which is denominated on the docket as "State *versus* John Robert Bridges, *alias* Jack Bridges." Such decision will be invoked in other criminal trials as a guiding and binding precedent. The preservation unimpaired of our basic rules of criminal procedure is an end far more desirable than that of hurrying a single sinner to what may be his merited doom. For this reason, I vote for a new trial, and dissent to the ruling which makes my vote ineffectual.

*Mr. Justice Seawell* has authorized me to state that he concurs in this dissent.

BARNHILL, J., concurring: The dissent filed herein discusses a feature of the case to which no exception was entered and upon which the defendant does not rely in his brief. His counsel excepted for that (1) the court instructed the jury they could return in this case only one of two verdicts: guilty of murder in the first degree or guilty of murder in the second degree; and (2) the court failed to instruct the jury that they could return a verdict of not guilty. These two exceptions are directed to the one assignment of error debated here, to wit, the court erred in that it did not sufficiently charge the jury that it might, and the conditions

under which it should, return a verdict of not guilty. This assignment is fully discussed in the majority opinion. In the conclusion there reached I concur.

But what about the rabbit flushed by the dissent? Did the court unduly prejudice defendant in its instructions and by the colloquy with counsel during the charge? Since the defendant's life is at stake, this attack upon the validity of the trial should not go unanswered.

There was uncontradicted and compelling evidence that defendant slew the deceased. It contains no element of mitigating circumstances, and its credibility was not substantially assailed. Wisdom dictated that counsel, to save the life of their client, undertake to persuade the jury that the circumstances of the killing were not such as to establish pre-meditation and deliberation beyond a reasonable doubt. The record indicated that they, in conducting the defense and in their arguments to the jury, wisely pursued this course. That this was the theory of the defense was admitted here. So I understood.

The court, to be quite sure that it correctly interpreted the theory of the defense, gave counsel for the defendant full opportunity to challenge its instructions based thereon, to the end that it might correct them if it was in error. Practically at the threshold of the charge the colloquy between court and counsel, quoted in the majority opinion, took place. No exception was entered then and no assignment of error based thereon is presented here.

Thus counsel, in effect, formally admitted, in open court as well as in their arguments, that the homicide was committed by defendant and that the circumstances of the killing were such as to make it murder in the second degree. To this defendant indicated his assent. In my opinion this is the one reasonable interpretation to be placed on the colloquy between court and counsel.

Had counsel so stated at the beginning of the trial, it would have been binding on defendant. That it was made during the progress of the trial does not alter its force and effect. *S. v. Grier,* 209 N.C. 298, 183 S.E. 272. It was a judicial admission made in open court and in the presence of the defendant. It was made at a time and under circumstances which afforded him an opportunity to protest. *S. v. Redman,* 217 N.C. 483, 8 S.E. 2d 623. They were authorized to speak for him. The court acted on the admission. That it did so cannot be held for error. *S. v. Grier, supra.*

It is true the defendant did not go on the witness stand, and the colloquy took place in the presence of the jury. But the court made no direct inquiry of the defendant which put him "on the spot" and compelled, or even invited, an incriminating reply. The court did, however, by its inquiry, afford the defendant full opportunity to affirm or deny the

formal statement of counsel, otherwise binding on him. This was a thoughtful and praiseworthy effort on the part of the trial judge to protect the defendant in all of his rights.

The formal admission had already been made. It did not require defendant's affirmative ratification. His silence would have given assent, but he elected to affirm. How the action of the court in affording him an opportunity to repudiate it could be prejudicial to him I cannot perceive.

In any event, whether counsel referred to the only possible verdicts to be rendered or to the question of manslaughter, the court, notwithstanding the admission, admonished the jury that it should not convict the defendant of any offense unless it was fully satisfied by the evidence that he committed the homicide charged. This feature of the charge is fully discussed in the majority opinion.

I vote to affirm.